T.C. Memo. 1997-393


UNITED STATES TAX COURT


KIM BEAUCHAMP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7683-95.                    Filed August 26, 1997.


<u>John D. Desbrow</u>, for petitioner.

<u>Linette B. Angelastro</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in, an addition to, and penalties with respect to petitioner's Federal income tax as follows:

| Year | Deficiency | Addition to Tax Sec. 6653(a) | Penalties Sec. 6662(a) |
|------|-----------|------------------------------|------------------------|
| 1988 | $67,131 | $3,357 | --- |
| 1989 | 83,983 | --- | $16,797 |

1990      79,843              ---                15,969

In the answer, respondent asserted that the additions to tax and the penalties with respect to petitioner's Federal income tax should be as follows:

|  | Additions to Tax | | Penalties | |
| --- | --- | --- | --- | --- |
|  | Sec. | Sec. | Sec. | Sec. |
| Year | 6653(a)(1) | 6653(b)(1) | 6662(a) | 6663(a) |
| 1988 | $62 | $49,424 | --- | --- |
| 1989 | --- | --- | $829 | $59,879 |
| 1990 | --- | --- | 368 | 58,502 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are:

(1) Whether petitioner underreported his medical practice gross receipts for 1988, 1989, and 1990 in the amounts of $50,292, $58,971, and $67,488, respectively;

(2) whether petitioner is entitled to deduct various costs related to real property as ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business;

(3) whether petitioner is liable for the addition to tax for

---

[1]  Respondent concedes that petitioner substantiated Schedule A medical expenses in the amount of $3,377 for 1990. Petitioner concedes that he understated his income in the amounts of $44,405 and $58,669 for 1989 and 1990, respectively. Petitioner further concedes that he is not entitled to alimony deductions for 1988, 1989, and 1990.

fraud pursuant to section 6653(b)(1) for 1988 and the penalty for fraud pursuant to section 6663(a) for 1989 and 1990; or in the alternative, whether petitioner is liable for the addition to tax for negligence pursuant to section 6653(a)(1) for 1988 and the accuracy-related penalty pursuant to section 6662(a) for 1989 and 1990; and

(4) whether respondent is barred by the statute of limitations from assessing the deficiency and penalty for 1989.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background Information

Petitioner Kim Beauchamp (Dr. Beauchamp) resided in Sun Valley, California, at the time he filed his petition. During the years in issue,[2] petitioner was a physician specializing in obstetrics and gynecology, and he operated a medical practice as a sole proprietorship. Petitioner employed various persons in his medical practice and paid them in cash.

Dr. Beauchamp's Tax Returns

Petitioner prepared his own Federal income tax returns for 1988, 1989, and 1990. Petitioner had no formal training in

---

[2] Unless otherwise indicated, all descriptions refer to the 1988, 1989, and 1990 tax years.

accounting or tax return preparation.

On his Schedules C for 1988, 1989, and 1990, petitioner listed his principal business or profession as "Med. Doctor & Home Construction Co", "Medicing [sic] & Construction", and "Med. Doctor & Contractor", respectively. On each return there was only one Schedule C.

Petitioner reported $261,269, $270,658, and $317,334 in gross receipts from his medical practice for 1988, 1989, and 1990, respectively. Petitioner determined his gross receipts for the years in issue by totaling the amounts reported to him by Form 1099 payors. During the audit of petitioner in 1991 (the audit), he told Revenue Agent Harold Jung (Mr. Jung) that 99.9 percent of his patients paid for medical services through insurance, Medicare, or Medi-Cal; therefore adding up the Forms 1099 was the most appropriate way to determine his gross receipts.

Petitioner claimed various items on Schedule C of his tax returns. As costs of goods sold[3] (COGS) of his medical practice, petitioner claimed expenditures for capital improvements to real property and wages paid in the amounts of $31,176, $38,368, and

---

[3] The use of the term "cost of goods sold" is for convenience only and does not imply a finding that such amounts were cost of goods sold.

$34,080 for 1988, 1989, and 1990, respectively.[4] Petitioner did not carry medical malpractice insurance, and he had no receipts to show that he paid the $16,101 he claimed for such insurance for 1988. Petitioner did not keep a log for the car and truck expenses he claimed.

For all quarters of 1988, 1989, and 1990, petitioner failed to file employment tax returns and pay employment taxes for his employees. Prior to 1985, petitioner filed employment tax returns for his employees. Petitioner also failed to file information tax returns reporting wages paid to his employees.

Dr. Beauchamp's Books and Records

Petitioner did not have a bookkeeper or maintain any formal books for his medical practice. Petitioner summarized his expenses for each year on a few sheets of paper. Petitioner provided these papers to Mr. Jung as support for the Schedule C expenses he claimed.

Petitioner kept patient billing records; however, he did not provide these records to Mr. Jung or offer them into evidence at trial.

Petitioner gave Mr. Jung all the Forms 1099 petitioner had for 1989. The Forms 1099 showed that petitioner received

---

[4] Petitioner concedes that he is not entitled to claim real estate activity expenditures as medical practice COGS. In the notice of deficiency, respondent allowed petitioner these amounts of wages.

$267,614 in gross receipts from insurance companies and other business entities. Mr. Jung reconciled this with the amount petitioner reported as gross receipts on his tax return. Petitioner's reported gross receipts for 1989 ($270,658) were $3,044 more than the total income reported on his Forms 1099 ($267,614).

Mr. Jung asked for petitioner's Forms 1099 for 1988 and 1990; however, petitioner told Mr. Jung that he had misplaced them. Respondent obtained Information Returns Master File Transcripts (IRP transcripts) which were based upon information reported to the Internal Revenue Service (IRS) by payors who filed information returns with the IRS showing that the payors paid certain amounts (such as wages, interest, and other income) to petitioner during 1989 and 1990. For 1990, the IRP transcripts showed that petitioner received $313,735 in gross receipts from insurance companies and other business entities. Petitioner's reported gross receipts for 1990 ($317,334) were $3,599 more than the total income reported on his Forms 1099 ($313,735).

Without petitioner's Forms 1099 or IRP transcript for 1988, respondent was unable to perform a similar comparison for 1988 of petitioner's reported gross receipts and the amount reported to the IRS as paid to petitioner by Form 1099 payors.

Dr. Beauchamp's Bank Accounts

Petitioner told Mr. Jung that he had two bank accounts at American Pacific State Bank:  One account (APSB account #1) which he used for both business and personal banking; and another account (APSB account #2) which was a dormant savings account.

Mr. Jung discovered during the audit that petitioner had an additional bank account at Security Pacific Bank (petitioner's SPB account).

Mr. Jung summoned information regarding items deposited into petitioner's three bank accounts.  Mr. Jung analyzed petitioner's bank accounts and determined that, in addition to payments from Form 1099 payors, petitioner deposited substantial amounts of personal checks and cash into his three bank accounts.

Mr. Jung prepared schedules of omitted income.  Mr. Jung did not include checks from insurance companies and other Form 1099 payors.  Mr. Jung included checks from Joyce Choe (Ms. Choe) in the schedules, but subtracted those amounts from the total of unreported income.  Mr. Jung excluded all items which he determined were from nontaxable sources.  Mr. Jung determined that some deposits from business entities which did not issue Forms 1099 were for medical services--the checks were made payable to "Dr. Beauchamp" or "Dr. Beauchamp, M.D."; the checks had indications in the memo section that they were for medical

services; or the checks were payable in amounts petitioner normally charged for office visits--so he included these payments in the schedules.

Respondent determined that petitioner underreported his gross receipts by the following amounts deposited, in the form of checks from patients and cash, into his three bank accounts:

| Year | APSB Acct. #1 | APSB Acct. #2 | Petitioner's SPB Acct. | Total |
|------|------|------|------|------|
| 1988 | $34,082 | $415 | $15,795 | $50,292 |
| 1989 | 37,037 | --- | 21,934 | 58,971 |
| 1990 | 53,577 | --- | 13,911 | 67,488 |

Dr. Beauchamp's Real Estate Activity

Ms. Choe was the owner of the following real property (Ms. Choe's properties):

15149 Mission Hills Road, Mission Hills, Cal.
14850 Ryan Street, Sylmar, Cal.
14708 and 14714 Chatsworth Street, Mission Hills, Cal.
14640 Brand Boulevard, Mission Hills, Cal.
11031 and 11038 Burnet Avenue, Mission Hills, Cal.
11065 Arleta Avenue, Mission Hills, Cal.

Petitioner paid the mortgages on Ms. Choe's properties.

Prior to 1988, petitioner entered into an oral agreement with Ms. Choe pertaining to real estate related activities. Under the agreement, petitioner supervised the improvement of Ms. Choe's properties (including the demolition of existing structures and the construction of two family residences).[5]  In

_____

[5]  Petitioner was not a licensed contractor in the State of California, but he had a lifelong interest in "tinkering" with
                                                (continued...)

exchange for improving Ms. Choe's properties, petitioner was entitled to receive the return of the money he spent to improve the property and half of any profit on the sale of each improved parcel. Petitioner, however, did not account to Ms. Choe for amounts he spent to improve the properties.

Petitioner told Mr. Jung that none of Ms. Choe's properties were sold during the years in issue. In 1989, the property located at 11031 Burnet Avenue was sold for $140,000. This property was purchased for $90,000. Petitioner had been in charge of the sale. Ms. Choe did not receive any of the $50,000 difference between the cost and sale price of the property. Petitioner did not report any gain or loss from the sale of real property nor any income from his real estate activity on his returns.

OPINION

Unreported Income

Petitioner argues that respondent bears the burden of proof. Petitioner contends that respondent has not proven by clear and convincing evidence that the bank deposits in 1988 were not reported in income and that the deposits in 1988, 1989, and 1990 from businesses which did not issue Forms 1099 are medical practice income.

The Commissioner's determinations generally are presumed

---

[5] (...continued)
structures.

correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Durando v. United States, 70 F.3d 548, 550 (9th Cir. 1995). The U.S. Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has held that in order for the presumption of correctness to attach to the notice of deficiency in unreported income cases,[6] the Commissioner must come forward with substantive evidence establishing "some evidentiary foundation" linking the taxpayer to the income-producing activity, Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977), or "demonstrating that the taxpayer received unreported income", Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982); see also Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985). Once there is evidence of actual receipt of funds by the taxpayer, the taxpayer has the burden of proving that all or part of those funds are not taxable. Tokarski v. Commissioner, 87 T.C. 74 (1986). The Commissioner must take into account any nontaxable sources of deposits of which the Commissioner is aware in determining the portion of the deposits that represents

---

[6] Although Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), was an unreported income case regarding illegal source income, it is now well established that the Court of Appeals for the Ninth Circuit applies the Weimerskirch rule in all cases involving the receipt of unreported income. See Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982); Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989).

taxable income but is not required to trace deposits to their source. Petzoldt v. Commissioner, 92 T.C. 661, 695-696 (1989).

We examine the record to determine whether there is a minimal evidentiary foundation supporting respondent's determination of unreported income. We find that there is.

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C. Memo. 1966-81. The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The Commissioner is given latitude in determining which method of reconstruction to apply when a taxpayer fails to maintain records. Petzoldt v. Commissioner, supra at 693.

For the years in question, petitioner maintained inadequate books and records. Petitioner's bookkeeping consisted of a few sheets of paper which lacked indicia of reliability. Respondent employed the specific items method of proof to reconstruct petitioner's gross receipts from his medical practice. This

method is a direct method of proof, and it has been approved by this Court.  See Schooler v. Commissioner, 68 T.C. 867 (1977); Schaaf v. Commissioner, T.C. Memo. 1991-530.

Respondent began the analysis by examining petitioner's Forms 1099 from 1989 and IRP transcripts for 1989 and 1990. Respondent determined that the amounts reported by petitioner as medical practice gross receipts were virtually identical to the amounts reported on the Forms 1099 and the IRP's.  Respondent then analyzed specific items deposited into petitioner's bank accounts during 1988, 1989, and 1990.  These deposits included cash and personal checks from patients which were gross receipts from petitioner's medical practice.  Respondent prepared schedules of omitted income for these items.  The schedules show that petitioner did not report substantial amounts of medical practice gross receipts.

This case is distinguishable from Weimerskirch v. Commissioner, supra, where "the Commissioner did not attempt to substantiate the charge of unreported income by any other means, such as by showing * * * [the taxpayer's] net worth, bank deposits, cash expenditures, or source and application of funds." Id. at 362.  Additionally, in Weimerskirch, the taxpayer was not shown by admissible evidence to have actually possessed any of the funds that the Commissioner determined to be taxable income. In the instant case, respondent has substantiated the determination with predicate evidence.  See Blohm v.

<u>Commissioner</u>, 994 F.2d 1542, 1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636 (once the Commissioner made a minimal evidentiary showing, the deficiency determination was presumed correct). Respondent's analysis of petitioner's bank deposits and petitioner's concession that he did not report income of $44,405 and $58,669 for 1989 and 1990, respectively, connect petitioner with the funds forming the basis of the deficiency. The burden of proof, therefore, lies with petitioner to show error in respondent's determinations. See <u>Schad v. Commissioner</u>, 87 T.C. 609, 620 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987) (connecting the taxpayer with the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous).

Petitioner did not present any evidence or argument, other than that respondent bears the burden of proof, to prove that he did not omit from income any of the cash or checks listed in the schedules of omitted income, or that these funds were not taxable income, during the years in issue. Petitioner has not met his burden; therefore, we find that petitioner had unreported income in the amounts of $50,292, $58,971, and $67,488 for 1988, 1989, and 1990, respectively.

<u>Mortgage Interest, Property Tax, and Real Estate COGS</u>

Petitioner claimed deductions for mortgage interest and property taxes paid relating to Ms. Choe's properties on his Schedule A and claimed as costs of goods sold the expenditures

relating to his improvements of Ms. Choe's properties on the same Schedule C he used for his medical practice. Petitioner concedes that he could not combine his real estate activity and medical practice on one Schedule C, and that he was not entitled to deduct or treat as costs of goods sold the expenditures of his real estate activity on his medical practice Schedule C. Petitioner also concedes that he was not entitled to deduct the mortgage interest and property taxes on his Schedule A.

Petitioner argues, however, that: He was in the construction business; he incurred expenses relating to his improvements of Ms. Choe's properties in connection with this separate business; these expenses were deductible pursuant to section 162; therefore, he can offset these expenses against his medical practice income.[7] Respondent asserts that petitioner has not shown he was in a trade or business; consequently, section 162 does not support his claimed deductions. Respondent further argues, in the alternative, that should we find that petitioner was in a trade or business, then his real estate activity expenditures must be capitalized.

Taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business.

---

[7] Petitioner's argument, basically, seems to be that he made the mistake of combining the expenses of his two businesses on one Schedule C and deducting the mortgage interest and real estate taxes related to Ms. Choe's properties on his Schedule A instead of his Schedule C.

Sec. 162(a).  The Supreme Court has stated that "to be engaged in a trade or business, * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit.  A sporadic activity, a hobby, or an amusement diversion does not qualify."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). The taxpayer bears the burden of showing he had the required profit motive.  Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

Whether a taxpayer has the required profit motive is to be determined on the basis of all the facts and circumstances of each case.  Allen v. Commissioner, 72 T.C. 28, 34 (1979).  Some of the relevant factors to be considered in determining whether an activity is engaged in for profit for the purposes of section 162 are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  See Thomas v. Commissioner, 792 F.2d 1256, 1258 (4th Cir. 1986),

affg. 84 T.C. 1244 (1985); Carter v. Commissioner, 645 F.2d 784, 787 (9th Cir. 1981), affg. T.C. Memo. 1978-202; Cooper v. Commissioner, 88 T.C. 84, 107-109 (1987); Seaman v. Commissioner, 84 T.C. 564, 589 (1985); Gestrich v. Commissioner, 74 T.C. 525, 529 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Churchman v. Commissioner, 68 T.C. 696, 702 (1977); Eppler v. Commissioner, 58 T.C. 691, 699 (1972), affd. without published opinion 486 F.2d 1406 (7th Cir. 1973); Purdy v. Commissioner, 12 T.C. 888, 892 (1949); sec. 1.183-2(b), Income Tax Regs. No one factor is controlling. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). While the focus of the test is on the subjective intention of the taxpayer, greater weight is given to the objective facts than to the taxpayer's mere statement of his or her intent. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

We find the following facts to be significant in our determination of whether petitioner had a profit motive: (1) Petitioner failed to carry on the activity in a businesslike manner; (2) petitioner did not maintain adequate books and records for his real estate activity or account to Ms. Choe for any amounts spent to improve her properties; (3) petitioner had no income from the activity (petitioner testified that he made no profit on the sale of the 11031 Burnet property, and he never

reported any gains or losses from his real estate activity); (4) the expected amount of profits from the activity was relatively insignificant when compared to other sources generating substantial income (petitioner reported gross income from his medical practice of $261,269, $270,658, and $329,629 for 1988, 1989, and 1990, respectively); (5) petitioner enjoyed the activity as evidenced by his lifelong interest in "tinkering" with structures; (6) petitioner was not a licensed contractor in the State of California; and (7) petitioner's time commitment to his medical practice (he testified that he spent "24 hours a day" treating patients) left him with little time to devote to a second trade or business.

After considering all the facts and circumstances in this case, we find that petitioner's real estate activity was not an activity engaged in for profit; therefore, petitioner was not entitled to deduct any real estate activity COGS, mortgage interest payments, and property tax payments as ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[8]

Civil Fraud

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the

_____

[8] We note that in so holding, and in light of petitioner's concessions, supra, we need not decide whether these amounts need to be capitalized or whether petitioner substantiated payments of these amounts.

revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy his burden of proof, the Commissioner must show: (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The Commissioner must meet this burden through affirmative evidence because fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

A. Underpayment of Tax

Petitioner conceded that he underreported income for 1989 and 1990. We are satisfied that the Commissioner has established by clear and convincing evidence an underpayment of tax by petitioner for each of the years in issue.

B. Fraudulent Intent

The Commissioner must also prove that a portion of the underpayment was due to fraud. Professional Servs. v.

Commissioner, 79 T.C. 888, 930 (1982). The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). A taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). The sophistication, education, and intelligence of the taxpayer are relevant to determining fraudulent intent. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Stephenson v. Commissioner, supra at 1006; Iley v. Commissioner, 19 T.C. 631, 635 (1952).

Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) awareness of the

obligation to file returns, (11) failing to file tax returns, (12) failing to make estimated tax payments, and (13) dealing in cash.  See Spies v. Commissioner, supra at 499; Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603.  We note that some conduct and evidence can be classified under more than one factor.

1.  Reliance on Return Preparer

Petitioner argued that his longtime close friend Kwang Kim prepared his return and that petitioner relied upon Mr. Kim.  We found that petitioner, and not Mr. Kim, prepared the returns. This argument does not support petitioner.

2.  Petitioner's Sophistication and Experience

Petitioner is a medical doctor who had no formal training in accounting or tax return preparation.  On the basis of these facts, we shall not hold petitioner to either a high or low standard while evaluating his actions.

3.  Consistent and Substantial Understatements of Income

The mere failure to report income is not sufficient to establish fraud.  Merritt v. Commissioner, 301 F.2d 484, 487 (5th

Cir. 1962), affg. T.C. Memo. 1959-172.  Consistent and substantial understatement of income, however, may be strong evidence of fraud when coupled with other circumstances.  Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).  A pattern of consistent underreporting of income, when accompanied by other circumstances indicating an intent to conceal income, may justify the inference of fraud.  Holland v. United States, 348 U.S. at 139.

Petitioner concedes that he omitted gross income of $44,314 and $58,668 for 1989 and 1990, respectively.[9]  The understatements for all 3 years in issue are consistent and substantial; they are evidence of fraud.

4.  Failure To Maintain Adequate Books and Records

Failure to maintain adequate books and records may be indicative of fraud.  Truesdell v. Commissioner, 89 T.C. 1280, 1302 (1987); Gajewski v. Commissioner, supra at 200.  Petitioner did not have a bookkeeper or maintain any formal books of account for his medical practice.  Petitioner summarized his expenses for each year on a few sheets of paper.  Petitioner maintained client billing records, but he failed to provide them to Mr. Jung or offer them into evidence at trial.  All of this is evidence of fraud.

---

[9]  We note that the amounts petitioner omitted for 1989 and 1990 are larger than what he concedes and that he also omitted gross income for 1988.

5. <u>Implausible or Inconsistent Explanations of Behavior</u>

Petitioner made implausible and inconsistent statements. Examples of such implausible or inconsistent testimony and behavior are:

(a) Petitioner testified that he did not prepare his own returns; however, in his amended petition and his reply to answer to amended petition he repeatedly claimed that he prepared his own returns, and at audit he told Mr. Jung that he prepared his own returns;

(b) petitioner told Mr. Jung at audit that none of Ms. Choe's properties were sold during 1988, 1989, and 1990, but he testified at trial that some of Ms. Choe's properties had indeed been sold;

(c) petitioner testified that the reason he did not give some of his records to Mr. Jung was because they were lost in 1994 during the Northridge earthquake, yet the earthquake which petitioner claimed destroyed the records occurred 3 years after the audit.

The cumulative effect of such testimony is indicative of fraud on the part of petitioner.

6. <u>Intent To Mislead</u>

Misleading statements to an investigating agent may be evidence of fraud. See <u>Gajewski v. Commissioner</u>, 67 T.C. at 200. Petitioner attempted to mislead Mr. Jung when he stated that his patients exclusively paid for his services through insurance

companies and that totaling the Forms 1099 was the most accurate way to determine gross receipts. In fact, petitioner's patients often paid him directly in cash and by check.

Petitioner told Mr. Jung that he had bank accounts only at American Pacific State Bank. In fact, petitioner had another bank account--petitioner's SPB account--which Mr. Jung discovered on his own during the audit. This is evidence of fraud.

7. Lack of Credibility of Petitioner's Testimony

A taxpayer's lack of credibility, inconsistent testimony, or evasiveness are factors in considering the fraud issue. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25. Petitioner's testimony often consisted of answers like: "I, you know, I can't, I don't, I can't recall," and "I don't remember that, no, I don't know. I must have. I'm not sure." In fact, petitioner seemed to know very little very often. Petitioner also was reluctant to testify. Petitioner's testimony, when taken as a whole, demonstrated his lack of credibility and is evidence of fraud.

8. Other Factors

Petitioner had two employees during the years in issue. He paid those employees in cash; he did not file employment tax returns; and he failed to pay their employment taxes. Petitioner knew that employment tax returns were due because he had filed them in earlier years. Petitioner also failed to file information tax returns for these employees.

Petitioner claimed $6,406 of child care costs as a business expense on his Schedule C for 1990. Petitioner claimed expenses for medical malpractice insurance when in fact he did not carry such insurance. Petitioner also dealt in cash.

After reviewing all of the facts and circumstances, we conclude that respondent has clearly and convincingly proven that a portion of petitioner's underpayments of tax for 1988, 1989, and 1990 was due to fraud on the part of petitioner.

Once the Commissioner establishes that a portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud except for any portion of the underpayment which the taxpayer establishes is not attributable to fraud. Secs. 6653(b)(2), 6663(b).

We find that the portion of each underpayment attributable to petitioner's claiming COGS for his real estate activity is not due to fraud. Petitioner believed that his real estate activity was a trade or business. Furthermore, petitioner disclosed on his 1988, 1989, and 1990 Schedules C that his principal business or profession was "Med. Doctor & Home Construction Co", "Medicing [sic] & Construction", and, "Med. Doctor & Contractor", respectively. Combining his medical practice gross receipts and real estate activity COGS on one Schedule C appears to have been a mistake by petitioner and was not due to fraud.

We conclude, therefore, that petitioner is liable for an addition to tax for fraud pursuant to section 6653(b)(1) for

1988, and penalty for fraud pursuant to section 6663(a) for 1989 and 1990, for the part of each underpayment attributable to unreported gross receipts from petitioner's medical practice and the alimony deductions he claimed.

## Negligence

Respondent argues that petitioner is liable for the addition to tax for negligence for 1988 and the accuracy-related penalty for negligence for 1989 and 1990 on any portion of the underpayments not found to be attributable to fraud.

For 1988, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the entire underpayment if any part of it was due to negligence. For 1989 and 1990, section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of the underpayment attributable to negligence. See sec. 6662(b)(1). Neither section applies to any portion of an underpayment on which an addition to tax or penalty for fraud is imposed.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code. Secs. 6653(a)(3), 6662(c). Negligence also has been defined as a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Failure by a taxpayer to keep adequate records may justify imposition of the addition

to tax for negligence.  See <u>Lysek v. Commissioner</u>, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; <u>Crocker v. Commissioner</u>, <u>supra</u> at 917.  Failure to maintain adequate records also indicates disregard of the rules or regulations that require a taxpayer to keep permanent records sufficient to establish, inter alia, the taxpayer's gross income and deductions.  See <u>Crocker v. Commissioner</u>, <u>supra</u> at 917.

We have found that petitioner failed to keep or maintain adequate records.  We conclude that petitioner is liable for an addition to tax due to negligence pursuant to section 6653(a)(1) for 1988, and for the accuracy-related penalty pursuant to section 6662(a) for 1989 and 1990 for the part of the underpayments that we have not found to be attributable to fraud.[10]

<u>Statute of Limitations for 1989</u>

Petitioner argues that the deficiency and penalty for 1989 are barred by the statute of limitations because respondent has not proven that petitioner's actions were fraudulent.

In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed at any time.  Sec.

---

[10]  We note that petitioner concedes that he is liable for the addition to tax for negligence for 1988 and the accuracy-related penalty for 1990 regarding Schedule C items in the amounts of $35,422 and $47,109, respectively.  We also note that petitioner did not argue on brief that he is not liable for the addition to tax for negligence and the accuracy-related penalty regarding his "real estate COGS".

6501(c)(1).  If the return is fraudulent in any respect, it deprives the taxpayer of the bar of the statute of limitations for that year.  Lowy v. Commissioner, 288 F.2d 517, 520 (2d Cir. 1961), affg. T.C. Memo. 1960-32; see also Colestock v. Commissioner, 102 T.C. 380, 385 (1994) ("Thus, where fraud is alleged and proven, respondent is free to determine a deficiency with respect to all items for the particular taxable year without regard to the period of limitations.").

We found that petitioner filed a fraudulent income tax return for 1989; therefore the period of limitations on assessment for that year remains open.

To reflect the foregoing,

Decision will be entered under Rule 155.