132 T.C. No. 13

UNITED STATES TAX COURT

HI-Q PERSONNEL, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22101-04.                    Filed May 4, 2009.


       P corporation provided skilled and unskilled
laborers for casual employment (temporary laborers) to
more than 250 client companies.  P gave temporary
laborers the option of being paid by check or in cash.
For those paid in cash, P failed to withhold Federal
income taxes and pay either the employer or employee
portions of FICA taxes (together, employment taxes) for
all taxable quarters in 1995, 1996, 1997, and 1998.  In
2002, P's president and sole shareholder, N, pleaded
guilty to failing to withhold and pay the employment
taxes and to conspiracy to defraud the United States.
R determined P was liable for the employment taxes
under secs. 3402, 3102, and 3111, I.R.C., and imposed
fraud penalties under sec. 6663(a), I.R.C.  R argues
that N's guilty plea collaterally estops P from denying
its responsibility for paying the employment taxes and
from denying fraud.  In the alternative, R argues that
P is the employer of the temporary laborers and for
that reason is liable for the employment taxes and
fraud penalties.  P argues that R's determinations were

not timely because R did not make them within the 3-year period of limitations in sec. 6501(a), I.R.C.

1. Held: P is collaterally estopped from denying its responsibility for paying the employment taxes.

2. Held, further, P is the statutory employer of temporary laborers under sec. 3401(d)(1), I.R.C., and therefore is liable for paying the employment taxes.

3. Held, further, P is liable for fraud penalties under sec. 6663(a), I.R.C.

4. Held, further, R's determinations were timely under sec. 6501(c)(1), I.R.C., because P filed false or fraudulent returns.

Mark E. Cedrone, for petitioner.

Linda P. Azmon, for respondent.

HALPERN, Judge: The petition in this case was filed in response to a Notice of Determination of Worker Classification (the notice) regarding petitioner's liabilities pursuant to the Federal Insurance Contributions Act (FICA) and for Federal income tax withholding (together, employment taxes) for all taxable quarters in 1995, 1996, 1997, and 1998. After concessions,[1] the following questions remain.

(1) Is petitioner collaterally estopped from denying that it was responsible for paying the employment taxes?

(2) Has respondent properly determined that the workers identified in the notice as "Temporary Laborers" should be

---

[1] Principally, petitioner concedes that it is not entitled to relief under sec. 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended.

legally classified as petitioner's employees for each taxable quarter in 1995, 1996, 1997, and 1998?

(3)  Is petitioner liable for the employment taxes?

(4)  Is petitioner liable for fraud penalties?

(5)  Have the periods of limitations for assessing and collecting the employment taxes expired?

A table setting forth the employment taxes and fraud penalties respondent determined is attached to this report as an appendix.

Unless otherwise stated, all section references are to the Internal Revenue Code (the Code) in effect for the taxable quarters in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  At the time the petition was filed, petitioner's principal place of business was in Philadelphia, Pennsylvania.

Background

Beginning in 1995 and extending through 1998, petitioner operated an employment service that provided skilled and unskilled laborers for casual employment (temporary laborers) to more than 250 client companies (clients) for a fee.  Clients paid petitioner by check for the services of temporary laborers, and

petitioner offered temporary laborers the choice of being paid by check or of being paid in cash (temporary laborers paid by check and temporary laborers paid in cash, respectively). Petitioner included temporary laborers paid by check on its regular payroll and treated them as its employees for employment tax purposes. Petitioner disregarded temporary laborers paid in cash for employment tax purposes. To remain competitive in recruiting temporary laborers, petitioner honored temporary laborers' choices as to how to be paid. In placing temporary laborers with clients, petitioner did not distinguish between temporary laborers paid by check and temporary laborers paid in cash. During the taxable quarters here in issue, petitioner paid $14,845,019 to temporary laborers paid in cash.

During those periods, Luan Nguyen (Mr. Nguyen) was president of petitioner and its sole shareholder. As more fully explained infra, Mr. Nguyen was indicted on, and pleaded guilty to, Federal criminal charges in connection with the failure to pay employment taxes with respect to the $14,845,019 paid to temporary laborers paid in cash.

Petitioner's Client Contracts

Petitioner's relationship with its clients was established by contract. A typical client contract (client contract) included the following provisions:

1.  Hi-Q will provide to CLIENT the following classifications of temporary employees at the rates set forth.

|     SERVICE     |     RATE     |
| --- | --- |
| GENERAL LABOR | $9.00 per/hr |

        *    *    *    *    *    *    *

2.  The hourly rate of payment for services listed above shall be paid by CLIENT to Hi-Q, per hour, per employee. * * *

3.  Payment shall be made in full, to Hi-Q by check within 7 days from the date of the invoice rendered by Hi-Q. * * *

        *    *    *    *    *    *    *

5.  CLIENT agrees not to advance any money, goods or services to Hi-Q employees without Hi-Q's prior written consent.  CLIENT agrees not to leave CLIENT'S premises with any cash, negotiable instrument, or other valuable items thereon * * * unattended in the presence of any Hi-Q employees or [to] entrust the same to the care, custody and control of any Hi-Q employees without Hi-Q's prior written consent.

6.  CLIENT will not authorize Hi-Q employees to operate any vehicle without Hi-Q's prior written consent. * * *

7.  In the unlikely event that the services of a Hi-Q employee prove unsatisfactory, Hi-Q shall immediately provide a replacement. * * *

8.  Hi-Q shall promptly pay all employees, and shall make all federal, state and local payroll tax deductions, deposits and payments as required by law.

        *    *    *    *    *    *    *

10. Hi-Q shall provide worker's compensation insurance coverage for all employees and provide evidence of same to CLIENT.

11. Upon notification to Hi-Q by CLIENT and written consent of Hi-Q, CLIENT shall have the right to hire any Hi-Q employee who has worked for CLIENT for a period in excess of 520 consecutive hours or 13 consecutive weeks, at no fee or commission paid to Hi-Q. However, upon employing any Hi-Q employee prior to completion of 520 consecutive hours, CLIENT agrees to pay to Hi-Q a fee of ten (10%) percent of employee's annual salary, i.e. 2080 hours [at] employee's starting hourly rate paid by CLIENT to employee.

12. If without Hi-Q's prior written consent, any employee referred to CLIENT by Hi-Q is employed by CLIENT, or by another division, subsidiary or affiliate of CLIENT, within six (6) months from the last date said employee was on Hi-Q's payroll and working for CLIENT, CLIENT agrees to pay to Hi-Q a fee of ten (10%) percent of employee's annual salary, i.e. 2080 hours at employee's starting hourly rate paid by CLIENT to employee.

Petitioner's Business

Petitioner employed job counselors responsible for all aspects of recruiting temporary laborers. Job counselors recruited temporary laborers through newspaper advertisements and referrals. Job counselors interviewed each temporary laborer and performed background checks by calling the laborer's prior employer or listed reference. After recruiting a temporary laborer, job counselors matched the laborer with an appropriate position according to the laborer's qualifications and the job descriptions clients provided. Before placing a temporary laborer with a client, petitioner required the laborer to complete a job application. Approximately 80 to 90 percent of the temporary laborers petitioner recruited chose to be temporary laborers paid in cash.

In its promotional material, petitioner made many promises to clients. It stated that, by hiring temporary laborers through petitioner, clients could avoid paying "Employee Tax" and "Social Security". It pledged to make "all federal, state and local payroll tax deductions, deposits and payments as required by law." It represented that it was responsible for providing workers' compensation insurance for all temporary laborers. It claimed that it "[offered] training to our employees on computers, on job-specific work, languages, and specialized industrial machinery", and stated that, "if your location has no access to public transit, we will provide HI-Q employees with [free] transportation to your site." Petitioner also promised that clients could "easily" hire any temporary laborer, ensuring that clients hired only "the best of the best" to their "permanent staff."

As stated, petitioner treated temporary laborers paid by check as its employees for employment tax purposes. On its Forms 941, Employer's Quarterly Federal Tax Return, it reported as wages the amounts it paid those temporary laborers. For those temporary laborers, it withheld Federal income taxes under section 3402. It also withheld those temporary laborers' shares of FICA taxes under section 3102 and paid its own corresponding share of FICA taxes under section 3111. In contrast, petitioner did not require temporary laborers paid in cash to produce proper

identification for Federal income tax purposes or to prepare the documents necessary for payroll tax deductions. It did not issue to temporary laborers paid in cash either Forms 1099-MISC, Miscellaneous Income, or Forms W-2, Wage and Tax Statement.

To generate funds to pay temporary laborers paid in cash, petitioner cashed some client checks at check-cashing agencies. It did not record on its books the proceeds of those client checks as business income or the payments to temporary laborers paid in cash as payroll expenses. For the years in issue, petitioner failed to report $14,845,019 as cash wages paid.

Clients could refuse the services of any temporary laborer, and petitioner was contractually bound to provide a replacement laborer on request. Nonetheless, petitioner retained the right at any time to reassign any temporary laborer from one client to another. Petitioner required temporary laborers unable to report to a client's premises for work to notify petitioner; petitioner, in turn, notified the client.

Clients completed timesheets for petitioner showing the hours temporary laborers worked. Petitioner billed clients for temporary laborers' services by means of invoices based on those timesheets. Often, however, petitioner paid temporary laborers before receiving payment from clients.

Criminal Proceedings

Mr. Nguyen was a defendant in the criminal case of <u>United States v. Nguyen</u>, docket No. 2:02CR745 (E.D. Pa., Nov. 6, 2002) (the criminal case).  On November 6, 2002, Mr. Nguyen was indicted on 10 counts.  Count 1 of the indictment charges a violation of 18 U.S.C. sec. 371, Conspiracy to commit offense or to defraud United States; counts 2 through 10 of the indictment charge violations of section 7202, Willful Failure To Collect or Pay Over Tax, and 18 U.S.C. sec. 2, Principals (viz., one who aids and abets the commission of an offense against the United States is punishable as a principal).[2]

In pertinent part, the indictment states:

COUNT ONE
(CONSPIRACY TO DEFRAUD THE UNITED STATES)

INTRODUCTION

THE GRAND JURY CHARGES THAT:

1.  At all times relevant to this Indictment, Hi-Q Personnel, Inc. ("Hi-Q Personnel") was a corporation doing business * * * as a temporary employment service that supplied casual laborers to clients for a fee.

---

[2] The taxable quarters in issue with respect to count 1 (the 16 quarters in 1995 through 1998) differ from the taxable quarters in issue with respect to counts 2 through 10 (the 8 quarters in 1997 through 1998).  The reason is that the period of limitations for violations of sec. 7202 is 6 years.  See sec. 6531(4).  Thus Mr. Nguyen, indicted Nov. 6, 2002, could not be charged with violations of sec. 7202 for returns filed before November 1996.

2.  At all times relevant to this Indictment, LUAN NGUYEN * * * was the president and sole shareholder of Hi-Q Personnel.

3.  At all times relevant to this Indictment, PHUONG NGUYEN * * * was employed by Hi-Q Personnel and responsible for the day-to-day operation of the business, including, but not limited to, the supervision of the preparation of the payroll[,] including the cash payroll; the supervision of the hiring of temporary laborers who were given the option of being paid in cash; and the cashing of checks used to pay the cash payroll.

4.  At all times relevant to this Indictment, the casual laborers supplied * * * to client businesses were employees of Hi-Q Personnel.  As part of its business of providing laborers to its clients, Hi-Q Personnel acknowledged and agreed in its contracts with its clients that Hi-Q Personnel, and not the client, was responsible for collecting, accounting for and paying over to the United States all employment taxes.

5.  [F]rom 1995 through 1998, Hi-Q Personnel supplied temporary laborers to approximately 259 client companies.

6.  At all times relevant to this Indictment, LUAN NGUYEN, * * * as the President and sole shareholder of Hi-Q Personnel, was required by Title 26 of the United States Code, to collect, truthfully account for, and pay over to the United States, taxes imposed by Title 26, United States Code, namely Hi-Q Personnel's employees' federal income tax withholdings * * * [and FICA taxes,] ( * * * collectively referred to as "employment taxes" * * *).  In this regard, LUAN NGUYEN * * * and Hi-Q Personnel were required truthfully to account for and pay over the employment taxes each quarter by filing * * * [Form 941] by reporting therein the total wages paid to Hi-Q Personnel employees and the amount of employment taxes due and owing to the United States on those wages, and by paying employment taxes due on those wages at the time the Form 941 was filed * * *.

## THE TAX CONSPIRACY

7.   [From January 1, 1995, through January 31, 1999, the defendants LUAN NGUYEN and PHUONG NGUYEN] conspired and agreed together * * * to defraud the United States concerning its governmental functions and rights, by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service [IRS] * * * in the ascertainment, computation, assessment and collection of revenue, that is, the employment taxes due and owing to the United States * * * from Hi-Q Personnel.

## THE OBJECT OF THE CONSPIRACY

8.   The object of the conspiracy was to prevent the IRS from discovering the actual wages paid to the employees of Hi-Q Personnel and from assessing and collecting employment taxes due thereon.

## MANNER AND MEANS

9.   It was a part of the conspiracy that Hi-Q Personnel contracted with various businesses in the greater Philadelphia, Pennsylvania area to supply the businesses with casual laborers * * *.

10. It was further a part of the conspiracy that Hi-Q Personnel acknowledged and agreed in its contracts with its clients that Hi-Q Personnel, and not the client, was responsible for collecting, accounting for and paying over to the United States all employment taxes due on wages earned by the laborers.

11. It was further a part of the conspiracy that defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * caused Hi-Q Personnel * * * to give the laborers * * * a choice to be paid either in cash, which they understood to mean that there would be no employment taxes withheld from their wages, or by check in which case all appropriate payroll taxes would be collected, accounted for, and paid over to the United States.

(a)  When laborers * * * opted to be paid in cash, they were not required to produce proper identification for income tax purposes or prepare the necessary documents for payroll tax deductions, and did not receive * * * [a Form W-2] from Hi-Q Personnel.

12. It was further a part of the conspiracy that defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * paid a substantial number of their employee laborers in cash to conceal the true number and identities of the employees, the amounts of cash wages paid to Hi-Q Personnel's employee laborers, and the fact that they did not collect or account for the employment taxes due on the cash wages paid.

13. It was further a part of the conspiracy that to generate the cash needed to meet and facilitate the concealment of its cash payroll, the defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * used check cashing agencies to cash checks obtained from their clients to pay for the labor provided by Hi-Q Personnel.

                *     *     *     *     *     *     *

14. It was further a part of the conspiracy that to conceal the amount of employment tax due to the United States, the defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * substantially understated and misrepresented the wages paid to the employees of Hi-Q Personnel on the * * * [Forms 941] filed on behalf of Hi-Q Personnel each quarter with the IRS during the conspiracy.

15. It was further a part of the conspiracy that * * * [from January 1, 1995, through January 31, 1999,] the defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * failed to account for, collect and pay over to the IRS employment taxes in the approximate amount of $3,326,054.48 on total unreported wages of approximately $14,845,019.24.

OVERT ACTS

16. In furtherance of the conspiracy and to accomplish its object, the defendants committed the following overt acts * * *:

        (a)  [Between January 1, 1995, and December 31, 1998,] on different occasions, the defendants LUAN NGUYEN * * * and PHUONG NGUYEN, * * * together and separately, cashed corporate checks received from client companies at check cashing agencies located in Philadelphia, Pennsylvania.

(b)  [Between January 1, 1995, and December 31, 1998,] on different occasions, the defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * caused Hi-Q Personnel to pay employees of Hi-Q Personnel in cash at the offices of Hi-Q Personnel.

(c)  [T]he defendants LUAN NGUYEN * * * and PHUONG NGUYEN * * * filed with the IRS in Philadelphia, Pennsylvania a false Form 941 for * * * [each quarter, sixteen in total, in taxable years 1995 through 1998,] which substantially misrepresented the wages paid to Hi-Q Personnel employees, each filing constituting a separate overt act * * *[.]

*    *    *    *    *    *    *

All in violation of Title 18, United States Code, Section 371.

*    *    *    *    *    *    *

[COUNTS TWO THROUGH TEN]
(FAILURE TO COLLECT, ACCOUNT FOR AND PAY OVER EMPLOYMENT TAXES)

THE GRAND JURY FURTHER CHARGES THAT:

1.  Paragraphs 1 through 6 of Count One are incorporated herein as if fully set forth.

2.  [For the taxable quarters beginning December 31, 1996, and through the taxable quarter ending December 31, 1998, defendant LUAN NGUYEN,] being a person required under Title 26, United States Code, to collect, account for and pay over taxes imposed by Title 26, United States Code, did willfully fail to collect and cause to be collected, truthfully account for and cause to truthfully be accounted for, and pay over and cause to be paid over to the United States, federal income tax withholdings and * * * [FICA] taxes, of approximately * * * [$2,224,384.73] due and owing to the United States on taxable wages paid by Hi-Q Personnel * * * to its employee laborers of approximately * * * [$9,640,197.62].

All in violation of Title 26, United States Code, Section 7202 and Title 18, United States Code, Section 2.

On March 10, 2003, at the change of plea hearing, Mr. Nguyen accepted the guilty plea agreement (the plea agreement), thereby pleading guilty to all 10 counts in the indictment. On July 24, 2003, the U.S. District Court for the Eastern District of Pennsylvania sentenced Mr. Nguyen to 150 months in prison and $1,000 in special assessments, and, on October 10, 2003, the court entered a judgment of conviction against him in the criminal case.

## The Notice

The notice states the amounts of employment taxes respondent determined for the taxable quarters in issue along with the fraud penalties he determined. See appendix. Respondent determined a fraud penalty for each taxable quarter in issue.

The notice omits a list of the temporary laborers that respondent determined to be petitioner's employees during those taxable quarters. That omission is explained as follows:

> Please Note:
> No individuals were listed * * * due to inadequate records. While the books and records provided by the Taxpayer did not identify each individual worker to be reclassified [as an employee], the administrative file contains sufficient evidence to support a class of workers identified as "Temporary Laborers".

## OPINION

### I. Introduction

Petitioner operated an employment service providing temporary laborers to clients for a fee. Petitioner offered

temporary laborers the option of being paid by check or in cash. Petitioner included temporary laborers paid by check on its regular payroll and treated them as its employees for employment tax purposes. Petitioner disregarded temporary laborers paid in cash for employment tax purposes.

Mr. Nguyen, petitioner's president and sole shareholder, was indicted on, and pleaded guilty to, various counts involving conspiracy to defraud the United States and failure to pay employment taxes with respect to the cash payments to temporary laborers paid in cash.

The present action involves respondent's attempts to collect the unpaid employment taxes (and fraud penalties) from petitioner.

We shall address the issues remaining for decision in the order stated. Our authority to determine the employment classification question here in issue and the proper amount of employment tax is found in section 7436.

II. Issue Preclusion

A. Introduction

Relying on the doctrine of issue preclusion, respondent argues that, as a result of the plea agreement, petitioner may not contest its responsibility to pay the employment taxes here in issue. Petitioner objects. We agree with respondent.

B.   The Doctrine of Issue Preclusion

In Monahan v. Commissioner, 109 T.C. 235, 240 (1997), we

stated:

> The doctrine of issue preclusion, or collateral
> estoppel, provides that, once an issue of fact or law
> is "actually and necessarily determined by a court of
> competent jurisdiction, that determination is
> conclusive in subsequent suits based on a different
> cause of action involving a party to the prior
> litigation."  Montana v. United States, 440 U.S. 147,
> 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439
> U.S. 322, 326 n.5 (1979)).  * * *

Under the doctrine of issue preclusion, or collateral

estoppel, (1) the issue to be decided in the second case must be

identical in all respects to the issue decided in the first case,

(2) a court of competent jurisdiction must have rendered a final

judgment in the first case, (3) a party may invoke the doctrine

only against parties to the first case or those in privity with

them, (4) the parties must have actually litigated the issue and

the resolution of the issue must have been essential to the prior

decision, and (5) the controlling facts and legal principles must

remain unchanged.  See Jean Alexander Cosmetics, Inc. v. L'Oreal

USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006); Monahan v.

Commissioner, supra at 240.

C.   Discussion

1.   Petitioner's Argument

Petitioner does not dispute the second or fifth conditions.

Petitioner, however, contends the other three conditions are not

satisfied, arguing that: (1) The fourth condition is not satisfied because Mr. Nguyen pleaded guilty, and so did not actually litigate any issue; (2) the first condition is not satisfied because the issue before us is not identical to any issue decided in the criminal case; and (3) the third condition is not satisfied because petitioner is not in privity with Mr. Nguyen. We disagree with all three arguments.

### 2. Issue Actually Litigated

A conviction based on a guilty plea is "nevertheless a judgment on the merits sufficient for purposes of collateral estoppel to preclude relitigation of issues determination of which was essential to the conclusion reached." Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 76 (1964); see De Cavalcante v. Commissioner, 620 F.2d 23, 26-27 n.9 (3d Cir. 1980) (noting that a guilty plea has collateral estoppel effect), affg. Barrasso v. Commissioner, T.C. Memo. 1978-432.[3] On October 10, 2003, the U.S. District Court for the Eastern District of Pennsylvania

---

[3] Petitioner relies on Bower v. O'Hara, 759 F.2d 1117, 1124-1126 (3d Cir. 1985), for the proposition that a guilty plea is insufficient for issue preclusion. The rule in Bower depends on the underlying law (e.g., State law). See Anela v. City of Wildwood, 790 F.2d 1063, 1068-1069 (3d Cir. 1986). The controlling law in Bower was the organic statute of the U.S. Virgin Islands. The controlling law here, however, is Federal common law. For that reason we follow De Cavalcante v. Commissioner, 620 F.2d 23, 26-27 n.9 (3d Cir. 1980), affg. Barrasso v. Commissioner, T.C. Memo. 1978-432, in which the Court of Appeals for the Third Circuit affirmed this Court's decision to give collateral estoppel effect to a taxpayer's guilty plea in Federal court. Bower is inapposite.

convicted Mr. Nguyen after accepting his guilty plea. His conviction is a judgment on the merits sufficient to preclude relitigation of the issues involved in the criminal case.

### 3. Issue Identity

Mr. Nguyen pleaded guilty to the charge of willfully failing to collect, truthfully account for, and pay employment taxes on taxable wages petitioner paid temporary laborers paid in cash. Specifically, Mr. Nguyen pleaded guilty to violating section 7202 and 18 U.S.C. sec. 2.[4][5] Section 7202 refers to the willful failure of any "person" required under the Code to collect, account for, and pay over any tax imposed by the Code. The requirement here was to collect and pay the employment taxes due on wages petitioner paid the temporary laborers paid in cash. It is the duty of the employer to collect, account for, and pay over

---

[4] Sec. 7202, Willful Failure To Collect or Pay Over Tax, provides:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony * * *.

[5] Tit. 18 U.S.C. sec. 2, Principals, provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

both the employees' and the employer's FICA taxes and to withhold income taxes.  See secs. 3102(a) and (b) (employees' FICA taxes), 3111 (employer's FICA taxes), 3402 and 3403 (Federal income tax withholding).

The reason Mr. Nguyen--and not petitioner--was charged with the violation of section 7202 is that section 7343 defines "person", as used in section 7202, to include an officer or employee of a corporation who, as such, is under a duty to perform the act in respect of which the violation occurs.  See United States v. Thayer, 201 F.3d 214, 219-220 (3d Cir. 1999) ("[T]he president and majority owner of * * * [employers] was properly charged and convicted as a 'person' under § 7202."). Mr. Nguyen was an officer of petitioner (its president), and petitioner does not claim Mr. Nguyen was an officer or employee of any client.  In other words, Mr. Nguyen was convicted of failing in his duty to collect, account for, and pay the employment taxes imposed by law on petitioner as the employer of temporary laborers.

Petitioner argues, however, that Mr. Nguyen's guilty plea is consistent with the theory that the clients were the temporary laborers' employers.  Petitioner relies on 18 U.S.C. sec. 2, which "'[abolished] the distinction between principals and accessories in offenses defined in the laws of the United States'".  United States v. Standefer, 610 F.2d 1076, 1082 (3d

Cir. 1979) (quoting Rooney v. United States, 203 F. 928, 932 (9th Cir. 1913)), affd. 447 U.S. 10 (1980).  Under 18 U.S.C. sec. 2, both those who commit crimes and those who aid and abet their commission are principals.  Id. at 1083.  Petitioner argues that Mr. Nguyen, although charged as a principal, in fact merely aided and abetted the clients' officers (the "true" principals under sections 7202 and 7343) in their efforts to defraud the Internal Revenue Service.  We reject petitioner's theory.

Petitioner's argument is founded on the precept that a guilty plea admits only the minimum facts necessary to sustain the indictment's charges.  See, e.g., De Cavalcante v. Commissioner, supra at 26-27 n.9.  Petitioner, however, cites no authority requiring us to ignore the indictment's plain language. In the criminal case, the ultimate issue was whether petitioner filed false or fraudulent Forms 941 for the 16 taxable quarters in 1995 through 1998 by failing to pay employment taxes on the wages petitioner paid temporary laborers paid in cash.  The indictment not only lists the 16 dates petitioner filed the "false" Forms 941 that "substantially misrepresented the wages paid to Hi-Q Personnel employees", but also describes petitioner's failure to provide temporary laborers with Forms W-2.  In that way, the indictment implicitly names petitioner as the employer of the temporary laborers, because only their employer must record their wages on its Forms 941 and issue them

Forms W-2.  Moreover, in several places, the indictment explicitly refers to the temporary laborers as petitioner's employees.  The indictment in no way suggests that any person or entity other than petitioner was the employer of the temporary laborers.  The indictment itself is unequivocal:  Petitioner was the employer of the temporary laborers.  Because that issue is now before us, the issue in the criminal case and the issue in this case are identical.

     4.  <u>Privity</u>

"A sole or controlling stockholder can be in privity with his * * * closely held corporation."  <u>Levitt v. Commissioner</u>, T.C. Memo. 1995-464, affd. without published opinion 101 F.3d 691 (3d Cir. 1996).  Petitioner argues that Mr. Nguyen and petitioner are not in privity and relies on a flawed analogy between this case and <u>Am. Range Lines, Inc. v. Commissioner</u>, 17 T.C. 764 (1951), affd. on privity issue 200 F.2d 844 (2d Cir. 1952).  In <u>Am. Range Lines v. Commissioner</u>, <u>supra</u> at 771, after recognizing that the "official acts" of a corporation could bind the "individual stockholders in their capacity as such", we declined to allow the actions of "stockholders in their individual capacity" to bind the corporation.  That case is distinguishable because of the capacity in which Mr. Nguyen was acting.

It is uncontroverted that Mr. Nguyen was petitioner's president and sole shareholder.  Mr. Nguyen committed tax fraud

on behalf of petitioner (not, as petitioner contends, in his "individual capacity"), and his duty to file accurate Forms 941 arose directly from his position as president of petitioner. Indeed, "a corporation can act only through its officers and * * * it does not escape responsibility for the acts of its officers performed in that capacity. Corporate fraud necessarily depends upon the fraudulent intent of the corporate officer." Federbush v. Commissioner, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963). Moreover, Mr. Nguyen did not benefit directly from his crimes; rather, he acted to attract temporary laborers to petitioner and thereby to make petitioner competitive. That is, petitioner, and so Mr. Nguyen, "benefited by being able to stay in business". We reject petitioner's analogy between this case and Am. Range Lines, Inc. v. Commissioner, supra, and find that petitioner and Mr. Nguyen are in privity.

D. Conclusion

The conditions for issue preclusion apply. In the criminal case, Mr. Nguyen was convicted of failing in his duty to collect, account for, and pay the employment taxes imposed by law on petitioner as the employer of temporary laborers. Petitioner is therefore precluded from denying that temporary laborers paid in cash were its employees. As a corollary, petitioner is also precluded from denying its liability for the payment of

employment taxes with respect to those temporary laborers, as set forth in the notice.

III.  Statutory and Common Law Employers

A.  Introduction

While we have held that petitioner is precluded from denying its liability for the payment of employment taxes with respect to temporary laborers paid in cash, the parties, particularly respondent, devoted considerable argument to whether the evidence (apart from that supporting issue preclusion) shows that petitioner was the common law employer of the temporary laborers. Even if we agreed with petitioner that it was not the common law employer of the temporary laborers (which we do not[6]), petitioner is nevertheless their statutory employer under section 3401(d)(1).  See, e.g., Educ. Fund of the Elec. Indus. v. United States, 426 F.2d 1053, 1057-1058 (2d Cir. 1970) (holding that even though taxpayer was not common law employer, taxpayer was statutory employer liable for withholding income taxes).

---

[6] Were it pertinent to our decision, we would find that, applying the factors courts generally use to determine whether an individual is the common law employee of the person for whom he performs services, e.g., degree of control, right to discharge, permanency of the relationship, and the relationship the parties intended to create, see Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001), the temporary laborers paid in cash were petitioner's, and not its clients', common law employees.

B. The Requirement To Pay Employment Taxes

Sections 3102, 3111, and 3402 require employers to withhold FICA taxes and income taxes from wages they pay to employees, and to pay their own share of FICA taxes. Section 3401(d) defines "employer", and provides in pertinent part:

> SEC. 3401(d). Employer.--For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that--
>
> (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" * * * means the person having control of the payment of such wages * * *

Although that definition is, by its terms, limited to chapter 24 of the Code, Collection of Income Tax at Source on Wages, the Supreme Court has applied it also to chapter 21 of the Code, FICA. See Otte v. United States, 419 U.S. 43, 51 (1974) ("The fact that the FICA withholding provisions of the Code do not define 'employer' is of no significance, for that term is not to be given a narrower construction for FICA withholding than for income tax withholding."). The Supreme Court in Otte v. United States, supra at 50, concluded that section 3401(d)(1) "obviously was intended to place responsibility for withholding at the point of control."

C.  Control of the Payment for Services

Petitioner contends that the clients "determined how much they would ultimately pay for any particular * * * [temporary laborer]."  If petitioner means that the clients determined how much they paid petitioner for temporary laborers' services, that is uncontested and irrelevant.  If petitioner means that the clients determined how much petitioner in fact paid temporary laborers, that is unsupported by any evidence in the record.[7]  Clients did nothing more than pay petitioner, according to rates set in the client contracts, for the services temporary laborers performed.  Those rates included not only the gross wages of the temporary laborers (that is, before employment taxes), but also a fee for petitioner.  Petitioner did not offer convincing evidence that all clients knew what salaries temporary laborers received or what fee petitioner earned.[8]  We find that petitioner set the salaries of the temporary laborers and paid their wages.  For that reason, we find that petitioner controlled the payment of wages for the services temporary laborers rendered for clients and is, therefore, liable for all employment taxes associated with those payments.  See, e.g., Winstead v. United States, 109

_____

[7] Indeed, petitioner often paid temporary laborers before receiving payment from clients.

[8] Although some client contracts included an additional markup as a fee (generally a percentage of the hourly rate), petitioner failed to offer convincing evidence that it paid temporary laborers in accordance with the contract terms.

F.3d 989, 991-992 (4th Cir. 1997) (holding that taxpayer who paid day laborers directly from his personal checking account, even though not their common law employer, was liable for Federal Unemployment Tax Act (FUTA) taxes and for both the employer and employee portions of FICA); Evans v. IRS (In re Sw. Rest. Sys., Inc.), 607 F.2d 1237 (9th Cir. 1979) (holding that control of payment of wages made debtor--and not common law employers-- liable for Federal income tax withholding, FUTA taxes, and both the employer and employee portions of FICA).

D.  Conclusion

For the reasons stated, petitioner is the statutory employer of the temporary laborers.  Petitioner is thus liable for the employment taxes as set forth in the notice.  See Evans v. IRS (In re Sw. Rest. Sys., Inc.), supra at 1240 ("[T]here is nothing inequitable in the placing of such a burden upon a corporation which voluntarily places itself in the position of handling the wages and reporting the amounts due under the taxing statutes but which then fails to deduct and remit the amounts required by law.").

IV.  Amounts of Employment Taxes

In the petition, petitioner argues that the amount of employment taxes due and owing on the $14,845,019 of unreported cash wages should be offset by the earned income credits to which temporary laborers paid in cash would have been entitled under

section 32 had they claimed those credits.  Petitioner does not renew that argument on brief, and, therefore, we shall consider petitioner to have abandoned it.  See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) ("If an argument is not pursued on brief, we may conclude that it has been abandoned.").

Petitioner does, however, argue that respondent's determinations of employment taxes should be disregarded because they are "arbitrary, capricious or without reasonable foundation."[9]  Petitioner so argues because respondent, claiming in the notice that he lacked information about individual laborers paid in cash, did not list those individuals but, instead, referred to a group of "Temporary Laborers".  The parties have stipulated the amount of unreported wages for each taxable quarter and disagree only as to the withholding rate to be applied to those wages.  Respondent argues, and petitioner does not disagree, that, for each taxable quarter, respondent used the "actual" rate petitioner used in filing the Forms 941 for the corresponding quarter to report the wages of temporary laborers paid by check.  Since he used the same income tax withholding rate petitioner used in filing its Forms 941, respondent argues that his methodology was not arbitrary,

---

[9] Respondent argues that petitioner is precluded from making that argument because it was not raised in the petition.  We deem the petition amended and allow petitioner to make the argument. See Rule 41(b).

capricious, or without reasonable foundation.  We agree with respondent.  We remind petitioner that it, not respondent, paid some temporary laborers in cash, failed to require them to produce proper identification for income tax withholding purposes, and failed to have them prepare the necessary documents for payroll tax deduction purposes.  Given petitioner's failure to secure Forms W-4, Employee's Withholding Allowance Certificate, from the temporary laborers paid in cash, respondent argues that he could have proposed an income tax withholding rate of 28 percent.[10]  Instead, for each taxable quarter in issue, respondent used the more favorable "actual" rate petitioner itself used for income tax withholding purposes on its Forms 941.  See appendix.

We shall sustain the employment taxes respondent determined.

---

[10] Although respondent did not cite the source of his authority to propose an income tax withholding rate of 28 percent, we assume he relies on the Internal Revenue Manual (IRM).  2 Audit, IRM (CCH) pts. 4.23.8.4, at 10,779-773-30 (Feb. 1, 2003) (Relief for Employer When Employees Have Paid Income Tax on Wages), and 4.23.8.8, at 10,779-773-39 (Feb. 1, 2003) (Computing Income Tax Withholding), direct respondent to compute withholding either under existing law and regulations or using sec. 31.3402(g)-1(a)(7)(iii), Employment Tax Regs., which provides the appropriate flat withholding rates.  See, e.g., Varjabedian v. United States, 339 F. Supp. 2d 140, 163-165 (D. Mass. 2004).  Petitioner's failure to provide the necessary information made a calculation under the former impossible.  Using the latter, the proper rate is 28 percent.

V.  Penalties for Fraud

    A.  Introduction

We next address whether, for each taxable quarter in issue, petitioner is liable for the fraud penalty respondent determined. Section 6663(a) provides:  "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."

"Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing."  Neely v. Commissioner, 116 T.C. 79, 86 (2001).  The Commissioner bears the burden of proving fraud and must establish it by clear and convincing evidence. See sec. 7454(a); Rule 142(b).  To satisfy the burden of proof, the Commissioner must show that (1) an underpayment in tax exists, and (2) the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes.  Neely v. Commissioner, supra at 86.  If the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.  See sec. 6663(b).

In section IV. of this report we sustained the employment taxes respondent determined, and we here find that the entire

underpayment is attributable to fraud.  Given Mr. Nguyen's conviction for conspiracy to defraud the United States, we agree with respondent that petitioner is precluded from denying fraud. Notwithstanding issue preclusion, we also find fraud by clear and convincing evidence on the facts before us.

B.  Fraudulent Intent

1.  Issue Preclusion

Mr. Nguyen pleaded guilty to one count of defrauding the United States in connection with his willful failure as an officer of petitioner to collect, truthfully account for, and pay the employment taxes here in issue.  Thus, fraudulent intent to evade the employment taxes was an element of the crimes of which Mr. Nguyen was charged, pleaded guilty, and was convicted.

Mr. Nguyen's fraudulent intent with respect to petitioner's employment tax obligations is imputed to petitioner.  See Benes v. Commissioner, 42 T.C. 358, 382 (1964) ("Where fraud is alleged against a corporate taxpayer, the requisite proof of fraudulent intent is to be found in the acts of its officers, inasmuch as the corporation, being an artificial person created by law, can have no separate intent of its own apart from those who direct its affairs."), affd. 355 F.2d 929 (6th Cir. 1966), overruled on another issue by Truesdell v. Commissioner, 89 T.C. 1280 (1987). A corporation can act only through its officers and cannot escape

responsibility for actions its officers perform in their official capacity. Federbush v. Commissioner, 34 T.C. at 749. "Corporate fraud necessarily depends upon the fraudulent intent of the corporate officer." Id. Moreover, Mr. Nguyen did not enrich himself directly; rather, his dishonesty served petitioner's competitive purposes. Petitioner was able to offer temporary laborers paid in cash, at the expense of the United States, a wage undiminished by employment taxes, and to avoid paying its own share of FICA taxes. Because Mr. Nguyen was acting as an agent of petitioner, his principal, we may infer petitioner's fraudulent intent. See Benes v. Commissioner, supra at 382.

Petitioner's president and sole shareholder was convicted of conspiracy to defraud the United States by willfully failing to comply with petitioner's statutory obligation to collect, account for, and pay employment taxes. That conviction precludes petitioner from here denying its fraudulent intent.

### 2. Fraud on the Facts

Even if petitioner is not precluded from denying its fraudulent intent, the facts independently support a finding of fraud. Petitioner, acting through its agents, offered temporary laborers cash wages not reduced by employment taxes. Petitioner understood its employment tax obligations, as demonstrated by its proper payment of employment taxes for temporary laborers paid by check. To conceal its disparate employment tax treatment of

temporary laborers according to their method of payment, petitioner ignored temporary laborers paid in cash for <u>all</u> business purposes. Petitioner conceded that it recorded on its books neither the proceeds of client checks cashed at check-cashing agencies as business income, nor the payments to temporary laborers paid in cash as payroll expenses. In that way, petitioner effectively hid 80 to 90 percent of its workforce. Those actions strongly suggest that petitioner intended to evade its legal obligation to treat temporary laborers paid in cash as its employees for employment tax purposes.[11]

To remain competitive, petitioner offered temporary laborers the opportunity to receive cash wages. Petitioner needed to supplement their net earnings either at its own expense or at the expense of the U.S. Treasury. Petitioner chose the latter course. As a bonus, petitioner evaded its own FICA obligations. Petitioner argues that it simply honored the wishes of its temporary laborers and lacked any fraudulent intent: "Each worker determined whether he or she would be paid in cash.

---

[11] We assume that, as a result of understating its business income, petitioner evaded 80 to 90 percent of its corporate income tax. We believe that any corporate income tax fraud was part and parcel of an overall intent to defraud the Government. Petitioner had to avoid both the income taxes and the employment taxes due respondent to evade its responsibility to pay either. The reporting of one would almost certainly have led respondent to challenge the omission of the other.

Petitioner did not determine who was to be paid in cash under any scenario." That may be true, but it is irrelevant; petitioner knowingly ignored its obligation to withhold and to pay employment taxes with respect to temporary laborers paid in cash. We find that petitioner intended to evade its employment tax obligations.

C. Conclusion

Because petitioner is liable for the underpayment of employment taxes and intended to prevent the collection of those taxes, petitioner is liable for the section 6663(a) fraud penalties in their entirety.

VI. Period of Limitations

Because petitioner filed false or fraudulent returns, i.e., the false and fraudulent Forms 941, the usual 3-year period of limitations of section 6501(a) does not apply. See sec. 6501(c)(1); Neely v. Commissioner, 116 T.C. at 85. Respondent's determinations were thus timely.

VII. Conclusion

We sustain respondent's determinations of deficiencies in and penalties with respect to petitioner's employment taxes for all taxable quarters in issue.

Decision will be entered for respondent.

APPENDIX

| Taxable quarter | Unreported wages | Federal withholding tax rate[1] | Federal withholding tax liability | FICA tax liability[2] | Sec. 6663(a) fraud penalties |
|---|---|---|---|---|---|
| 1995 Q1 | $550,300.17 | 0.0565 | $31,091.96 | $84,195.93 | $86,465.91 |
| Q2 | 578,706.40 | 0.0494 | 28,588.10 | 88,542.08 | 87,847.63 |
| Q3 | 855,895.25 | 0.0510 | 43,650.66 | 130,951.97 | 130,951.97 |
| Q4 | 734,370.85 | 0.0599 | 43,988.81 | 112,358.74 | 117,260.66 |
| 1996 Q1 | 669,742.84 | 0.0616 | 41,256.16 | 102,470.65 | 107,795.10 |
| Q2 | 784,396.38 | 0.0643 | 50,436.69 | 120,012.65 | 127,837.00 |
| Q3 | 1,031,409.80 | 0.0643 | 66,319.65 | 157,805.70 | 168,094.01 |
| Q4 | 914,585.63 | 0.0746 | 68,228.09 | 139,931.60 | 156,119.77 |
| 1997 Q1 | 925,198.32 | 0.0818 | 75,681.22 | 141,555.34 | 162,927.42 |
| Q2 | 982,099.62 | 0.0722 | 70,907.59 | 150,261.24 | 165,876.62 |
| Q3 | 1,083,568.56 | 0.0732 | 79,317.21 | 165,785.99 | 183,827.40 |
| Q4 | 1,003,822.37 | 0.0756 | 75,888.97 | 153,584.82 | 172,105.34 |
| 1998 Q1 | 1,202,354.30 | 0.0857 | 103,041.76 | 183,960.21 | 215,251.48 |
| Q2 | 1,098,759.00 | 0.0791 | 86,911.84 | 168,110.13 | 191,266.48 |
| Q3 | 1,202,302.80 | 0.0758 | 91,134.55 | 183,952.33 | 206,315.16 |
| Q4 | 1,227,506.95 | 0.0801 | 98,323.30 | 187,808.56 | 214,598.90 |

[1] To calculate for each taxable quarter the Federal withholding tax liability on the unreported wages petitioner paid to temporary laborers paid in cash, respondent used the "actual" withholding rate petitioner calculated in its corresponding Forms 941, which reported the wages and withholdings of temporary laborers paid by check.

[2] Secs. 3101 and 3111 each required petitioner to pay 7.65 percent of total wages. Therefore the FICA taxes in the notice represented 15.30 percent of the unreported wages.