T.C. Memo. 2011-180

UNITED STATES TAX COURT

HAL D. HICKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15909-08.            Filed July 28, 2011.

<u>Edward P. Guttenmacher</u>, for petitioner.

<u>Vivian N. Rodriguez</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  After concessions, the issues for decision
are whether petitioner is liable for a section 6663(a)[1] fraud
penalty with respect to his 1998 underpayment of tax and whether

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

respondent may assess penalties and interest relating to petitioner's 1998 liability.

                              FINDINGS OF FACT

During 1998 (year in issue), petitioner owned and operated multiple businesses, including Midwest Transit, which was in the business of transporting mail.  Fuel suppliers issued Midwest Transit fuel rebate checks, which were cashed by Midwest Transit employees who delivered the proceeds to petitioner.[2]  During the year in issue, petitioner used, for personal purposes, $199,800 of proceeds from the fuel rebate checks.

On December 21, 1998, petitioner incorporated Mail Trans, Inc. (Mail Trans), as an S corporation.  At all times during 1998, petitioner was the sole shareholder of Mail Trans.  In December 1998, Mail Trans purchased an airplane from Raytheon Corp. for approximately $4.2 million.  In December 1998, the airplane, with petitioner's accountant on board, was flown from Wichita, Kansas, to Oklahoma City, Oklahoma, where it was refueled before returning to Wichita.  At the time of the flight, the airplane was not painted and the interior was unfinished.  After the flight, Raytheon Corp. completed the airplane, and in

---

[2]A fuel rebate is typically a refund provided by a fuel supplier to the purchaser of its fuel.  If, for example, 100 gallons of fuel is purchased from a supplier at $1.03 a gallon and the purchaser receives a 3-cent-per-gallon rebate from the supplier, the supplier would mail a fuel rebate check to the purchaser for $3.

March 1999, petitioner took delivery of it. Mail Trans was not in the business of transporting mail and the airplane was not used for any business purpose.

On March 22, 1999, Mail Trans filed its 1998 Form 1120S, U.S. Income Tax Return for an S Corporation (Mail Trans' 1998 return), on which it reported a $110,000 net loss from "trade or business activities". The return contained only two entries (i.e., $100,000 in gross receipts and a $210,000 depreciation deduction). The $210,000 depreciation deduction was attributable to 1 month of depreciation relating to the airplane.

On October 15, 1999, petitioner filed his 1998 Form 1040, U.S. Individual Income Tax Return (1998 return). Petitioner did not report as income the $199,800 of proceeds from the fuel rebate checks. On Schedule E, Supplemental Income and Loss, of his 1998 return, petitioner reported a $110,000 passthrough loss attributable to Mail Trans (Schedule E loss).

On April 6, 2005, after a criminal investigation led by Assistant U.S. Attorney George A. Norwood, criminal proceedings in the U.S. District Court for the Southern District of Illinois (District Court) were initiated against petitioner. On January 12, 2006, petitioner signed an agreement in which he pleaded guilty to willfully making and submitting a false 1998 tax return in violation of section 7206(1) and to falsifying a fuel use certification form in violation of 18 U.S.C. sections 1001 and

1002 (plea agreement). The plea agreement provided that it "does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving Defendant."

On February 3, 2006, the District Court filed an amended stipulation of facts signed by Mr. Norwood, petitioner, and David Helfrey, petitioner's attorney. The amended stipulation of facts provided that petitioner willfully made, signed, and filed his 1998 Federal income tax return and that petitioner "did not believe * * * [the] return was true, correct, and complete as to every material matter." The amended stipulation of facts also provided:

> The income tax return was false as to a material matter, as follows. The defendant failed to report on the income tax return approximately $199,800 in income tax received through rebate checks issued to his company which the defendant used for his own personal use. In addition, the defendant took an unauthorized depreciation deduction of $210,000 in the tax year 1998 for an airplane purchased by one of his companies. The unauthorized deduction passed through from the defendant's S Corporation (Mail Trans) tax returns to the defendant's Individual Income Tax return for 1998. The amount that passed through was $110,000.

> \* \* \* \* \* \* \*

> The parties agree that the Tax Loss for relevant conduct purposes for * * * 1998 in this case is $228,258.

On September 11, 2006, the District Court held a sentencing hearing relating to petitioner's criminal case. The District Court readily acknowledged that it did not know the correct

amount of the tax loss incurred as a result of petitioner's misconduct and was willing to accept petitioner's requested downward adjustment to the proposed amount because that adjustment (i.e., from $256,258 to $228,258) did "not affect the [sentencing] guideline range".

On September 21, 2006, the District Court entered a judgment of conviction (judgment) pursuant to which petitioner was sentenced to 18 months in prison and ordered to pay the U.S. Postal Service $36.20 in restitution, the Internal Revenue Service (IRS) $228,258 in restitution, and the District Court a $200 assessment and a $3,000 criminal fine. The District Court determined that petitioner "[did] not have the ability to pay interest" and waived the interest requirement with respect to the $228,258 restitution award and the $3,000 fine.

On March 31, 2008, respondent issued petitioner a notice of deficiency relating to 1998. In the notice, respondent determined that petitioner underreported his income by $199,800 (i.e., the amount of fuel rebates used for personal purposes) and disallowed the Schedule E loss (i.e., the flowthrough expense relating to Mail Trans' $210,000 depreciation deduction). As a result, respondent determined that petitioner was liable for a $167,657 deficiency. In addition, respondent determined that all or part of the underpayment of tax required to be shown on

petitioner's 1998 return was due to fraud and that petitioner was therefore liable for a $127,243 section 6663(a) fraud penalty.

On June 20, 2008, Assistant U.S. Attorney for the Southern District of Illinois Gerald M. Burke filed two certificates of release of lien relating to the judgment against petitioner (collectively, certificates of release).  The certificates of release provided that "the requirements of section 3613(c) of title 18 of the United States Code have been satisfied with respect to the judgment * * *, together with all statutory additions; and that the lien for this judgment and statutory additions has thereby been released."[3]  On June 30, 2008, petitioner, while residing in Florida, filed his petition with the Court.  On July 14, 2008, petitioner made a restitution payment to the IRS of approximately $228,000.  The IRS did not deem this payment received until September 11, 2008.

OPINION

Petitioner concedes that he underreported his 1998 taxes and that he is liable for a section 6663 civil fraud penalty with respect to the portion of the underpayment of tax relating to

---

[3]Tit. 18 U.S.C. sec. 3613(c) (2006) provides:

an order of restitution made pursuant to sections * * * 3663 * * * [or] 3663A * * * is a lien in favor of the United States on all property and rights to property of the person fined * * *.  The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

$199,800 of unreported income. Consequently, petitioner's entire underpayment of tax is treated as attributable to fraud and subject to a 75-percent penalty, unless petitioner establishes by a preponderance of the evidence that a particular portion of the underpayment is not attributable to fraud. See secs. 6663(b), 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660-661, 664-665 (1990); Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Petitioner contends that he is not liable for a section 6663 civil fraud penalty with respect to the portion of underpayment of tax relating to the disallowed Schedule E loss (i.e., Mail Trans' $210,000 airplane depreciation deduction). We disagree.

Petitioner formed Mail Trans and purchased the airplane in December 1998. The airplane was flown once in 1998. Mail Trans, however, did not place the airplane in service in that year. In fact, the airplane was not completed and petitioner did not take delivery of it until 1999. Furthermore, the airplane was not used for any business purpose, and despite its moniker, "Mail Trans" was not in the mail transportation business. Nevertheless, Mail Trans reported a $210,000 airplane depreciation deduction (i.e., a deduction equal to 1 month of depreciation) on its 1998 return. See sec. 167(a); Piggly Wiggly S., Inc. v. Commissioner, 84 T.C. 739, 745-746 (1985), affd. on another issue 803 F.2d 1572 (11th Cir. 1986); secs. 1.167(a)-

10(b), 1.167(a)-11(e)(1)(i), Income Tax Regs.  Petitioner's machinations, substantial understatement of income, concealment of income, and filing of false documents convince us that he intended to evade tax.  See Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).  Accordingly, we sustain respondent's determination.

All of petitioner's contentions are unconvincing.  Petitioner's primary contention is that the District Court's judgment and the two certificates of release filed with respect to the judgment precluded respondent from assessing penalties relating to petitioner's 1998 deficiency.  In essence, petitioner contends that the doctrine of collateral estoppel applies with respect to his 1998 tax liability.  We reject this contention for the following reasons.  First, although petitioner pleaded guilty to willfully making and submitting a false tax return, petitioner's tax liability was not an essential element of the Government's case and was not actually litigated.  See sec. 7206(1); Montana v. United States, 440 U.S. 147, 153 (1979); Hi-Q Pers., Inc. v. Commissioner, 132 T.C. 279, 289-290 (2009).  Furthermore, the District Court did not make ultimate findings of fact with respect to petitioner's tax liability.  See Hi-Q Pers., Inc. v. Commissioner, supra at 290; Brotman v. Commissioner, 105 T.C. 141, 153 (1995).

Second, the District Court, in ordering that petitioner make restitution payments to the IRS as part of the judgment, did not make a determination of petitioner's civil tax liability and did not bar the Commissioner from assessing a greater amount of civil tax liability.  See Morse v. Commissioner, 419 F.3d 829, 833-835 (8th Cir. 2005), affg. T.C. Memo. 2003-332; Creel v. Commissioner, 419 F.3d 1135, 1140 (11th Cir. 2005) (providing that an order to pay restitution is a criminal penalty rather than a civil penalty); Hickman v. Commissioner, 183 F.3d 535, 537-538 (6th Cir. 1999), affg. T.C. Memo. 1997-566.[4]  Indeed, the District Court estimated the restitution amount and acknowledged that it may not have been the correct amount.

Third, the plea agreement explicitly provided that it "does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving Defendant."  Cf. Creel v. Commissioner, supra at 1140.  In addition, there was no reference to petitioner's civil tax liabilities in either the restitution order or the certificates of release, and we cannot infer from the language in the certificates of release that the District

---

[4]The Government, when a criminal proceeding is undertaken, does not surrender its right to collect tax deficiencies or civil fraud additions.  Spies v. United States, 317 U.S. 492, 495 (1943); Helvering v. Mitchell, 303 U.S. 391 (1938); United States v. Sabourin, 157 F.2d 820 (2d Cir. 1946); see also Harper v. Commissioner, 54 T.C. 1121, 1138 (1970).

Court determined that petitioner satisfied both his criminal and civil tax liabilities. Accordingly, respondent's ability to assess additional penalties on the deficiency relating to petitioner's 1998 return was not limited by the plea agreement, the District Court's judgment, the restitution order, or the certificates of release.[5]

Petitioner also contends that the stipulation of facts limits his liability. The stipulation of facts provides that "The income tax return was false as to a material matter, as follows", and petitioner contends that this language establishes that the return was false with respect to only one item (i.e., the unreported income relating to the rebate checks). Simply put, the language "false as to a material matter" (emphasis added) does not preclude a finding that the return was false with respect to more than one item. Finally, we reject petitioner's contention that he is not liable for a section 6663 fraud penalty

---

[5]Petitioner also contends that respondent is precluded from assessing interest on the deficiency relating to petitioner's 1998 return. Our jurisdiction to redetermine a deficiency in tax generally does not extend to statutory interest imposed pursuant to sec. 6601. See secs. 6213(a), 6214(a), 7481(c); Rule 13(a), (c); Katz v. Commissioner, 115 T.C. 329, 340-341 (2000); Naftel v. Commissioner, 85 T.C. 527, 529-531 (1985). Indeed, sec. 6601(e)(1) provides that interest is excluded from the definition of a "tax" for purposes of sec. 6211(a), and thus such interest is not a part of the "deficiency" over which we have jurisdiction. See White v. Commissioner, 95 T.C. 209, 213-214 (1990). Accordingly, we do not have jurisdiction over, and may not opine on, the interest assessment imposed pursuant to sec. 6601.

because he relied on professional advice (i.e., the advice of Raytheon Corp. employees, his accountant, and those who helped him form Mail Trans).  In support of this contention, petitioner offered merely his testimony, which simply was not credible.  See sec. 6664(c).

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.