**Leo L. LOWY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 194, Docket 26545.**

United States Court of Appeals Second Circuit.

Argued Feb. 17, 1961.

Decided April 4, 1961.

---

**Footnotes**

518

Maurice V. Seligson, New York City, for petitioner.

Lloyd J. Keno, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, SMITH and HAND, Circuit Judges.

HAND, Circuit Judge.

This case arises upon a petition to review a deficiency in the petitioner's income taxes for the year 1944. In his return for that year the petitioner showed a loss of nearly $200,000, which the Commissioner on audit changed to a tax due of over $600,000 which together with a 50% fraud penalty and interest is claimed to create a total tax liability of $1,600,-000. The Commissioner's figures are not disputed, but the assessment was barred by the Statute of Limitations on May 15, 1948—three years after the date when the return for 1944 was filed. The Commissioner argues that the petitioner was not entitled to invoke the bar of the Statute because he had been guilty of fraud in his return for 1944. The basis for this charge is as follows. The petitioner for several years before 1944 had been engaged in the manufacture and sale of airplane parts, his business being conducted by a corporation, called the American Rolbal Corporation, of which he was the only shareholder. All the assets of this corporation were transferred to the petitioner individually in May, 1943, but both parties agreed that the transfer should be treated as though it had been made on January 1, 1944, that being the mutual intention. The critical issue is whether as we have said, the tax return for 1944 was fraudulent in the sense that it tolled the Statute of Limitations, and allowed the Commissioner to tax the income at the much increased amount, which he had failed to do within the statutory period of three years. The charge of fraud rests upon the following facts.

The taxpayer's business involved the production of large amounts of steel "scrap" which means small pieces of steel ground off larger pieces in the manufacture. These are waste metal so far as concerns their use, but they have a value

nevertheless, which amounted in the year 1944 to more than $13,000. The taxpayer did not deposit this money in his bank through which he did business. On the contrary, he divided it among six bank accounts in sums running in 1944 from about $6,000 to $11. Four of these accounts were in the name of the petitioner and his wife jointly. The largest was in his wife's name alone and the next largest was in his own name. He employed two tax accountants, Berger and Miller, to prepare his individual returns for the years 1944 and 1945. The return for 1944 was made by Berger who had never seen the "scrap" accounts until after the return was filed; nor had Miller heard of the asset until after the return for 1944 had been filed. The question is whether this return for 1944 was fraudulent as an effort to suppress more than $13,000 of income that the petitioner concededly had received during that year.

The return for 1944 did not include any part of the "scrap" sales at all, and of the receipts from these sales only about $3,500 was deposited in the taxpayer's personal accounts. About $6,000 was deposited in his wife's account and about $3,000 in the joint account. No explanation is given for these deposits which made up more than two thirds of all "scrap" receipts for the year. Moreover, in 1942 and 1943 neither the returns of the corporation, nor of the taxpayer contained any of the sums for "scrap" sales although in 1942 the amount was over $14,000 and in 1943 over $5,000. It is impossible in the light of these three years to avoid the conclusion that it had been the taxpayer's habit deliberately to conceal from his taxable income some part at any rate of the "scrap" sales. The excuse for so doing in 1944 is to the last degree unreliable. It is true that the return was prepared under great pressure, and with some reserve as to its final correctness; indeed in the bill rendered by Berger to the taxpayer he described his work as "preparation of a tentative tax return," a description which in his testimony he called "ill-chosen,"

except as it meant that he "intended to file an amended or corrected return." He did not, however, suggest in the return itself anything of the kind. It would of course have been possible that these six items were omitted in 1944 by accident, but Berger did not give this as his reason. Rather, he said that there was such a large deficiency in income—about $200,-000—that "any adjustments of income would have to be very very considerable in order to overcome that deficiency." That would have had some plausibility, were it not for the fact that, as we have said, the taxpayer had made the same kind of omission in 1942 and 1943, for both of which he was later held liable.

■■■■ Fraud is an issue depending upon the payer's intent. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L. Ed. 751; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93; Heyman v. Commissioner, 2 Cir., 176 F. 2d 389, 393. When a taxpayer has himself testified, the decision of the tax court has the same finality as the finding of a district court—that is, it must be accepted unless it is "clearly erroneous." We can only conclude that the petitioner in the case at bar meant to leave out his receipts from "scrap" in order to conceal them from the taxing authorities. This was a "fraud," but it so happened that the deficiency alleged in the return was much greater than the amount of the "scrap" sales, and that any income resulting from the sales was therefore much more than matched by the deficiency. However, upon the audit of the return it was discovered that the petitioner had omitted large receipts that extinguished the deficiency and made the "scrap sales" taxable as income received. Both parties concede that these omissions were not fraudulent, and we accept them as innocent mistakes. Nevertheless, the result of the audit was to expose the "scrap sales" as income against which there was no corresponding deficiency. Since the "scrap sales" were suppressed by fraud, they were open to assessment in spite of the bar of the statute. When a return is in any part

fraudulent "The tax may be assessed * * * at any time" (§ 276, Int.Rev. Code 1939, 26 U.S.C.A.). As we understand the petitioner's argument it is that, even though the suppression of the "scrap sales" was intended to prevent their detection and assessment as part of the petitioner's income, his omission of them from the return could not have been "with intent to evade tax" (§ 276, Int. Rev.Code) for they were not taxable anyway because the return so much overstated the deficiency. In short, on the face of the return there would have been no income to tax even if the "scrap sales" had been disclosed. Consequently, the petitioner argued, that he could not have intended to "evade the tax," for he did not need to suppress the "scrap" sales.

We answer, however, that, if a return be fraudulent in any respect with intent to evade a tax, it deprives the taxpayer of the bar of the statute for that year, and permits a general reaudit of the return throughout, and will toll the Statute of Limitations on the reaudit of any item of the tax. In the case at bar there can be no possible doubt that the omission of 1944, like those of 1942 and 1943, was designed to protect the petitioner from income taxes that might otherwise be levied in one form or another. We read the section as tolling the bar of the Statute if the taxpayer has used fraud to interfere in any way with the collection of his taxes. If he would invoke the Statute, he must let the audit of his tax be made without any fraudulent intervention in the year in question. This the petitioner did not do.

■ Finally, we do not agree that the testimony of the respondent's witnesses was conclusive in petitioner's favor because the respondent called them. It may be true that courts have at times said the contrary, or nearly as much, but the notion is thoroughly discredited that, when a party calls a witness he is bound by that witness's story. The taxpayer in the case at bar was attempting to avoid any possible liability from a tax that turned out to be owing; this he did by the most obvious misrepresentation. It

would be a shocking instance of injustice, if this attempt were to succeed.

We decline to relieve the petitioner from his stipulation.

Order affirmed.