T.C. Summary Opinion 2011-128

UNITED STATES TAX COURT

OLLIE B. STONE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1001-08S.                    Filed November 1, 2011.

Ollie B. Stone, pro se.

<u>Anne W. Bryson</u>, and <u>Susan S. Hu</u> for respondent.

MORRISON, <u>Judge</u>:  This case was heard pursuant to section
7463 of the Internal Revenue Code in effect when the petition was
filed.  Under section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.[1]

_____

[1]Unless otherwise indicated, all further section references
are to the Internal Revenue Code in effect for the years in
                                        (continued...)

On October 22, 2007, respondent ("the IRS") issued petitioner, Ollie B. Stone, a notice of deficiency for tax years 1994, 1995, 1996, and 1997. The notice stated that the IRS had determined that Stone had deficiencies in tax of (i) $5,579 for 1994, (ii) $6,042 for 1995, (iii) $6,902 for 1996, and (iv) $13,973 for 1997. The notice also stated that the IRS had determined that Stone was liable for fraud penalties under section 6663(a) of (i) $4,184.25 for 1994, (ii) $4,531.50 for 1995, (iii) $5,176.50 for 1996, and (iv) $10,479.75 for 1997.

Stone timely filed a petition challenging the IRS's determinations. He was a District of Columbia resident at the time of filing.

We have jurisdiction to redetermine the amounts of Stone's deficiencies and to determine whether Stone is liable for the fraud penalties. See sec. 6214(a).

Background

The parties stipulated some facts; those facts are so found.

Stone was a public servant during the years at issue, 1994 through 1997. He worked for the federal government as a utility systems repair operator leader for the General Services Administration at the Suitland federal complex in Maryland. As part of his job, Stone was responsible for repair and maintenance

---

[1](...continued)
issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

projects. These projects included work on the complex's heating, electrical, ventilation, and air-conditioning systems.

The General Services Administration outsourced some of the repair and maintenance work to private contractors. If a project's estimated cost was above $2,500, the General Services Administration used a bidding process to select contractors. No-bid contracts were used for projects below $2,500.

Stone played an important role in the contracting process. He helped determine which projects would be outsourced. His managers relied on his representations about the need for and the cost of these projects. And he recommended contractors for the no-bid contracts.

For obvious reasons, workers in Stone's position were prohibited from accepting things of value from contractors. Yet Stone received cash, goods, and services from contractors working at Suitland. The parties stipulated that he received the following:

- In 1994, Stone received $21,709 in money and property from CRT Electric. CRT paid him $19,000 by 11 checks and bought him a Jacuzzi valued at $2,709.

- In 1995, Stone received $22,100 from CRT Electric and JEC Industries. CRT paid him $20,100 by 10 checks, and JEC paid him $2,000 by 1 check.

- In 1996, Stone received $19,535 in money, services, and property. CRT Electric paid him $13,745 by 9 checks and bought him musical equipment and installation services valued at $790. JEC Industries paid $5,000 for renovation work on his home.

- In 1997, Stone received $47,363 in money, services, and property. CRT Electric paid him $28,820 by 7 checks, bought him musical equipment valued at $2,099, and bought him supplies valued at $2,597 for renovating the interior of his home. JEC Industries bought him cabinets valued at $1,619 and paid $2,900 for work on his truck. Michael Lewis bought Stone furniture valued at $2,334 and gave him supplies valued at $2,444 for building a deck and a walkway. Lewis's company paid $2,750 to have Stone's deck and walkway built. Christopher T. Fitzgerald paid Stone $1,800 by 2 checks.[2]

Stone did not report the money, goods, or services he received from the contractors on his tax returns. For each year at issue, Stone timely filed a Form 1040, U.S. Individual Income Tax Return. The only income items he reported for those years were wages; taxable interest; and taxable refunds, credits or

---

[2]The parties stipulated that Stone received $1,800 from Fitzgerald but provided no further explanation about this amount.

offsets of state and local income taxes.  Stone reported the following income for each year:

| Year | Wages | Interest | Refunds, credits, or offsets of taxes | Total |
|------|-------|----------|----------------------------------------|-------|
| 1994 | $35,366 | 0 | $363 | $35,729 |
| 1995 | 37,946 | $13 | 952 | 38,911 |
| 1996 | 42,711 | 0 | 0 | 42,711 |
| 1997 | 44,233 | 240 | 0 | 44,473 |

In October 2001, a federal grand jury in Maryland charged Stone with 13 counts, including conspiracy, submitting false claims, filing false tax returns, and accepting payments as a public official.  Stone pleaded guilty to four counts of filing false tax returns in violation of section 7206(1), one count for each of the years at issue.[3]  After trial in the U.S. District Court for the District of Maryland, Stone was convicted of conspiracy in violation of 18 U.S.C. sec. 371, acceptance of payment by a public official in violation of 18 U.S.C. sec. 201(c)(1)(B), and five counts of submission of false claims in violation of 18 U.S.C. sec. 287.  The court sentenced him to 7 years in prison.

---

[3]Under sec. 7206(1), a person commits a felony if that person "Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter".

On October 22, 2007, the IRS issued Stone the notice of deficiency for tax years 1994, 1995, 1996, and 1997. The IRS determined that Stone failed to report the following amounts of gross income: (i) $21,709 for 1994, (ii) $22,100 for 1995, (iii) $24,635 for 1996, and (iv) $48,152 for 1997. Stone conceded that the amounts determined in the notice of deficiency were correct for 1994 and 1995. The parties agreed that the correct amount for 1996 was $19,535 and that the correct amount for 1997 was $47,362. The notice stated that the IRS determined the following deficiencies in tax: (i) $5,579 for 1994, (ii) $6,042 for 1995, (iii) $6,902 for 1996, and (iv) $13,973 for 1997. And the notice stated that the IRS determined that Stone was liable for the following penalties under section 6663(a): (i) $4,184.25 for 1994, (ii) $4,531.50 for 1995, (iii) $5,176.50 for 1996, and (iv) $10,479.75 for 1997.

## Discussion

The parties have agreed on the amounts of unreported income. Stone conceded that he had unreported income of $21,709 for 1994 and $22,100 for 1995, the amounts determined in the notice of deficiency. The parties have agreed that Stone had unreported income of $19,535 for 1996 and $47,362 for 1997, slightly less than the amounts determined in the notice of deficiency.

The parties disagree on (i) whether Stone is liable for the section 6663(a) penalties and (ii) whether section 6501(c)(1)

permits the IRS to assess taxes for the years at issue. As we explain below, Stone is liable for the section 6663(a) penalties, and section 6501(c)(1) permits the IRS to assess taxes for the years at issue.

## I.   Section 6663(a) Penalty

Section 6663(a) provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." The IRS has the burden of proving that a taxpayer is liable for the section 6663(a) penalty by clear and convincing evidence. Sec. 7454(a); Rule 142(b); see also Feller v. Commissioner, 135 T.C. 497, 501 (2010). If the IRS proves that part of an underpayment for a tax year is due to fraud, we treat the entire underpayment for that year as due to fraud, unless the taxpayer shows by a preponderance of the evidence that another part of the underpayment is not due to fraud. Sec. 6663(b).

The parties have stipulated that underpayments existed for all four years at issue. The underpayments consisted of the taxes that Stone failed to report on the money, property, and services he received from the contractors. We find that the IRS has shown by clear and convincing evidence that the entire

underpayment for each year at issue is attributable to fraud for the following reasons:[4]

- Stone consistently failed to report substantial amounts of income over a period of years.  See Klassie v. United States, 289 F.2d 96, 101 (8th Cir. 1961) ("A consistent pattern of underreporting large amounts of income over a period of years is substantial evidence * * * [of] an intent to defraud").

- Stone engaged in criminal activity as shown by his convictions for accepting a payment in violation of 18 U.S.C. sec. 201(c)(1)(B) and submitting false claims in violation of 18 U.S.C. sec. 287.  See Petzoldt v. Commissioner, 92 T.C. 661, 701 (1989) (stating that the taxpayer's convictions of crimes related to the understatement were evidence of fraudulent intent); McGee v. Commissioner, 61 T.C. 249, 260 (1973) (stating

---

[4]The IRS also claims that Stone admitted that he did not report income so that he would not have to pay tax on it.  We disagree.  On cross-examination, the IRS asked Stone whether he did not report the income so he would not have to pay tax on it.  According to the transcript, Stone answered:  "Well, I mean, I just didn't think of it like that.  I just went on, but the bottom line would be yes.  At the end of the day, that's what it would look like."  Given the transcript's punctuation, the IRS's interpretation is plausible.  But we believe the last part of Stone's answer is properly punctuated as "but the bottom line would be yes, at the end of the day that's what it would look like."  In other words, we understand Stone's answer to be a denial followed by an acknowledgment that it could appear as if he did not report the income to avoid paying taxes.

that we may infer fraudulent intent from evidence a taxpayer was attempting to defraud another), affd. 519 F.2d 1121 (5th Cir. 1975).

- Stone engaged in criminal activity as shown by his pleading guilty to filing false tax returns in violation of section 7206(1).  See, e.g., Evans v. Commissioner, T.C. Memo. 2010-199 (stating that pleading guilty to violating section 7206(1) was evidence of fraud); Valbrun v. Commissioner, T.C. Memo. 2004-242 (stating that conviction under section 7206(1) is persuasive evidence of intent to evade tax).

- Many of the payments Stone received were in the form of labor, supplies, or other property and thus were easier to conceal from the IRS.  See Spies v. United States, 317 U.S. 492, 499 (1943) (stating that fraud may be inferred from "any conduct, the likely effect of which would be to mislead or to conceal"); Robinson v. Commissioner, T.C. Memo. 1990-235 (finding fraud where county worker did not report similar kickbacks).

- Stone's cashing the checks he received, rather than depositing them into his bank account, made the checks less likely to be discovered by the IRS.  See Spies v. Commissioner, supra at 499.

We also find that Stone has not proven by a preponderance of the evidence that any part of the underpayments was not attributable to fraud.

## II.  Statute of Limitations

Generally, the IRS must assess income tax within three years of the later of (i) the date a taxpayer files a return or (ii) the last day prescribed by law or by regulations for filing the return.  Sec. 6501(a) and (b)(1); see also secs. 301.6501(a)-1(a), 301.6501(b)-1(a), Proced. & Admin. Regs.  But if part of an underpayment in a year is due to fraud, section 6501(c)(1) allows the IRS to assess the tax for that year at any time.  Sec. 6501(c)(1); sec. 301.6501(c)-1(a), Proced. & Admin. Regs.; Lowy v. Commissioner, 288 F.2d 517, 520 (2d Cir. 1961), affg. T.C. Memo. 1960-32.

The determination of fraud for section 6501(c)(1) purposes is the same as the determination of fraud for section 6663(a) purposes.  Neely v. Commissioner, 116 T.C. 79, 86 (2001); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000).  And as we have already explained, Stone is

liable for the section 6663(a) penalty for each year at issue. Thus under section 6501(c)(1), the IRS may assess the taxes for 1994, 1995, 1996, and 1997 at any time.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.