T.C. Memo. 2021-74

UNITED STATES TAX COURT

BELL CAPITAL MANAGEMENT, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21714-07.                    Filed June 14, 2021.

<u>William Edward Frantz</u> and <u>Robert H. Hishon</u>, for petitioner.

<u>Laura Beth Salant</u>, <u>Mistala M. Cullen</u>, and <u>David S. Weiner</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant case is before the Court on a motion for

summary judgment filed by the Internal Revenue Service (IRS or respondent).

**[*2]**  The petition was filed for redetermination of employment status pursuant to

section 7436.[1]  In a Notice of Determination of Worker Classification (NDWC) the

IRS determined that Ron H. Bell was petitioner's "employee" for purposes of the

Federal Insurance Contributions Act (FICA) under sections 3101, 3102(a), and

3111; the Federal Unemployment Tax Act (FUTA) under section 3301; and

income tax withholding under section 3402(a) (together, employment taxes) for

the periods listed below.  The IRS also determined that petitioner was liable for

employment taxes, fraud penalties under section 6663, and failure to deposit taxes

penalties under section 6656 in the following amounts:

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the relevant periods in issue,
and all Rule references are to the Tax Court Rules of Practice and Procedure.  We
round all monetary amounts to the nearest dollar.

[*3]

| Quarter/year | Employment taxes | | Penalties | | |
| | FICA tax | FUTA tax | Sec. 6656 | Sec. 6663 | Income tax withholding |
|---|---|---|---|---|---|
| Dec, 31, 1996 | $30,975 | $434 | $1,592 | $191,557 | $224,000 |
| Dec. 31, 1997 | 43,490 | 434 | 2,218 | 289,142 | 341,600 |
| Sept. 30, 1998 | 22,982 | --- | 1,149 | 122,236 | 140,000 |
| Dec. 31, 1998 | 42,755 | 434 | 2,182 | 342,157 | 413,000 |
| Sept. 30, 1999 | 43,802 | --- | 2,190 | 284,852 | 336,000 |
| Dec, 31, 1999 | 35,670 | 434 | 1,827 | 285,378 | 344,400 |
| Sept. 30, 2000 | 32,649 | --- | 1,632 | 192,486 | 224,000 |
| Dec. 31, 2000 | 31,320 | 434 | 1,609 | 250,616 | 302,400 |
| Mar. 31, 2000 | 20,845 | --- | 1,042 | 94,383 | 105,000 |
| Dec. 31, 2001 | 1,450 | 434 | 116 | 11,725 | 13,750 |

The questions in issue are: (1) Is petitioner collaterally estopped from denying that it was responsible for paying the employment taxes? (2) Has respondent properly determined that Ron H. Bell should be legally classified as petitioner's employee for all tax periods in issue? (3) Is petitioner liable for the employment taxes? (4) Is petitioner liable for fraud penalties? (5) Have the periods of limitations for assessing and collecting the employment taxes and penalties expired?

## Background

Some facts are stipulated and are so found. The stipulation of facts is incorporated herein by this reference. When the petition was filed, petitioner's

[*4] principal place of business was in Georgia.  Additionally, where noted herein we take judicial notice of the facts found in Foxworthy, Inc. v. Commission, T.C. Memo. 2009-203, 2009 WL 2877850, aff'd 494 F. App'x 964 (11th Cir. 2012).[2] See Fed. R. Evid. 201; Estate of Allen v. Commissioner, 6 T.C. 597, 604 (1946).

As detailed in Foxworthy, petitioner Bell Capital Management, Inc., was incorporated in 1984 by Ron H. Bell, who at all relevant times owned 100% of the stock and was its sole director.  Foxworthy, Inc. v. Commissioner, 2009 WL 2877850, at *2.  Petitioner provided investment services to individual clients and their financial planners in exchange for quarterly fees.  Id. at *3.  From 1991 through 1995, petitioner paid Mr. Bell wages of $761,978, $978,772, $691,006, $589,760, and $630,760, respectively.  Id.

Sometime around 1996, petitioner changed Mr. Bell's compensation structure.  Petitioner began leasing Mr. Bell's services through "offshore employee leasing transactions" (OEL transactions).  Petitioner entered into a "Contract for Personnel Services" with Nationwide Executive Staff Leasing (NESL) to lease Mr. Bell's services for a period beginning December 1, 1996, and ending November

---

[2]In support of his motion for summary judgment, respondent submitted an affidavit with several exhibits admitted into evidence during the Foxworthy trial. Petitioner does not object and merely requests that this Court also take judicial notice of certain additional facts and documents, which are discussed herein where relevant.

[*5] 30, 2001.  The contract was signed by the president of NESL, Mr. Reiserer,[3] and petitioner's vice president, Mr. Comsudes.  Pursuant to the contract, NESL agreed to lease Mr. Bell's services to petitioner on substantially a full-time basis.  Petitioner agreed to furnish space on its premises for Mr. Bell's use while he performed personnel services.  Petitioner also provided an automobile for business use and health, medical, and dental insurance fringe benefits, at petitioner's sole and exclusive cost.

Beginning December 1, 2000, petitioner signed a similar contract with International Leasing Services, Inc. (ILS).  The contract provided petitioner with the nonexclusive rights to the personnel services of Mr. Bell as an economist, financial planner, financier, business planner, investment counselor, wealth manager, author, lecturer, and educator.  During the tenure of petitioner's above-mentioned contracts, NESL and ILS each entered into personnel leasing contracts with companies such as Montrain Services, Ltd., and Fitzwilliam International Resources Services, Ltd. (together, leasing companies).  In turn, Mr. Bell entered into his own contracts with the leasing companies.

---

[3]Mr. Reiserer came under an IRS secs. 6700 and 6701 investigation but passed away during July 2004, and the investigation was closed.

**[\*6]**  After the implementation of the OEL transactions, Mr. Bell remained at the helm of petitioner's operations.  From 1996 through 2001, Mr. Bell signed petitioner's Forms 1120S, U.S. Income Tax Return for an S Corporation, in his capacity as president.  Mr. Bell also signed petitioner's 1999 State Corporation Annual Registration and is listed as its chief executive officer, chief financial officer, and as per the signature line, president.  Mr. Bell was once again listed as petitioner's chief executive officer and chief financial officer on the 2001 registration, signed by Mr. Comsudes in his capacity as vice president.  On August 6, 1999, the Securities and Exchange Commission accepted an offer of settlement in an administrative proceeding instituted against petitioner, Mr. Bell, Mr. Comsudes, and Mark S. Palmer.  Petitioner admitted that Mr. Bell was petitioner's president and sole shareholder, and Mr. Comsudes and Mr. Palmer were its vice presidents.  The offer of settlement was submitted and accepted jointly by petitioner and the individuals.

Pursuant to its contracts for personnel services, and as we found in Foxworthy, Inc. v. Commissioner, 2009 WL 2877850, at \*3, petitioner deducted the following amounts paid for the services of Mr. Bell during the periods in issue:

[*7]

| Year | Amount |
|------|--------|
| 1996 | $800,000 |
| 1997 | 1,220,000 |
| 1998 | 2,225,000 |
| 1999 | 2,430,000 |
| 2000 | 1,880,000 |
| 2001 | 425,000 |

For all the periods in issue, petitioner filed Forms 941, Employer's Quarterly Federal Tax Return, and Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return. None of the amounts reported therein relates to Mr. Bell. Petitioner did not deposit or pay any Social Security or Medicare taxes, or income tax withholding on any payments made to or for the benefit of Mr. Bell for any of the periods in issue.

In 2009 this Court ruled, among other things, that the OEL transactions employed in the instant case lacked economic substance. Id. at *15. We found that during the years in issue Mr. Bell continued to perform the same services for petitioner as he had in the past and that he constructively received the money petitioner transferred as part of the OEL transactions. Id. at *16-*18. We found that the amounts paid by petitioner, net of fees charged by the leasing companies, were deposited into various accounts owned and operated by entities with ties to

**[*8]** Mr. Bell or his associates. Id. at *17. We further held that Mr. Bell entered into the leasing contracts to conceal the money being transferred from petitioner to himself. Id. at *22. Accordingly, we held that Mr. Bell fraudulently underpaid his Federal income tax for the years in issue. Id. at *23.

Mr. Bell passed away in 2012. As part of the administration of Mr. Bell's estate, ownership of 100% of petitioner's stock was transferred to Mr. Bell's wife. Respondent's subsequent motion for summary judgment alleges that petitioner fraudulently failed to pay employment taxes with respect to the OEL payments made for Mr. Bell's benefit.

## Discussion

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant a motion for summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. & Subs. v. Commissioner, 118 T.C. 226, 238 (2002). We construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, the nonmoving

**[\*9]** party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see also Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

As stated above, respondent determined that petitioner was Mr. Bell's employer. It is the duty of the employer to collect, account for, and pay over both the employee's and the employer's FICA taxes and to withhold income tax. See secs. 3102(a) and (b) (employees' FICA taxes), 3111 (employer's FICA taxes), 3402 and 3403 (Federal income tax withholding). The first question in issue is whether petitioner is collaterally estopped from denying that it was responsible for paying the employment taxes. Relying on the doctrine of collateral estoppel, or issue preclusion, respondent contends that as a result of our findings in Foxworthy, petitioner may not contest its responsibility to pay the amounts of those items that are taxes here in issue. Petitioner objects.

In Monahan v. Commissioner, 109 T.C. 235, 240 (1997), we stated:

> The doctrine of issue preclusion, or collateral estoppel, provides that, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)). * * *

**[*10]** For this doctrine to apply, (1) the issue to be decided in the second case must be identical in all respects to the issue decided in the first case, (2) a court of competent jurisdiction must have rendered a final judgment in the first case, (3) a party may invoke the doctrine only against parties to the first case or those in privity with them, (4) the parties must have actually litigated the issue and the resolution of the issue must have been essential to the prior decision, and (5) the controlling facts and legal principles must remain unchanged. See Griswold v. Cty. of Hillsborough, 598 F.3d 1289 (11th Cir. 2010); Monahan v. Commissioner, 109 T.C. at 240.

Respondent is invoking this doctrine against petitioner, who was in privity with Mr. Bell by virtue of his being its sole shareholder and president. See Hi-Q Personnel, Inc. v. Commissioner, 132 T.C. 279, 292 (2009) (finding where individual was president and sole shareholder who committed fraud through his business, there was privity between the two; in the business case collateral estoppel precluded relitigation of employment tax issues decided in individual's case); Levitt v. Commissioner, T.C. Memo. 1995-464, 1995 WL 570439, at *18 ("A sole or controlling stockholder can be in privity with his * * * closely held corporation."), aff'd without published opinion, 101 F.3d 691 (3d Cir. 1996).

[*11] In Foxworthy, a consolidated case in which Mr. Bell was a petitioner, we decided that Foxworthy, Inc., was Mr. Bell's alter ego; that the OEL transactions lacked economic substance; that the money petitioner transferred as part of the OEL transactions was never part of any valid deferred compensation plan and instead was constructively received by Mr. Bell at the time of transfer by petitioner; and that Mr. Bell implemented the plan to fraudulently underpay tax. Foxworthy, Inc. v. Commissioner, 2009 WL 2877850, at *16-*23. The instant case involves the exact same OEL transaction, and so the controlling facts are the same. The legal principles regarding deferred compensation and fraud also remain the same. These issues were actually litigated, and their resolution was essential to our prior decision. Petitioner is therefore precluded from denying that the OEL transactions lacked economic substance. Petitioner is similarly precluded from denying that Mr. Bell arranged for the OEL transactions so as to fraudulently underreport and underpay tax.

However, as petitioner contends, the determination of worker classification, employment tax liability, and petitioner's withholding requirements or intent as to the transaction were not essential to our decision. Although we referred to the payments made for Mr. Bell's benefits as "wages", see, e.g., id. at *27, we did not address whether Mr. Bell met the definition of an "employee". We now turn to

[*12] whether respondent properly determined that Mr. Bell should be legally classified as petitioner's employee for all periods in issue.

Respondent contends that Mr. Bell was petitioner's employee pursuant to, among other statutes, paragraphs (1), (3), and (4) of section 3121(d). Section 3121(d) describes individuals who are considered employees regardless of their status under the common law. Individuals described in those paragraphs are commonly referred to as "statutory" employees. Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), aff'd, 93 F. App'x 473 (3d Cir. 2004). One such category of statutory employees consists of officers of corporations. Sec. 3121(d)(1). Section 31.3121(d)-1(b), Employment Tax Regs., limits that category as follows:

> (b) Corporate officers.--Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. A director of a corporation in his capacity as such is not an employee of the corporation.

Petitioner admits that Mr. Bell was an officer. Petitioner's tax returns, annual State filings, and SEC documents from the periods in issue all identify Mr. Bell as petitioner's president. Petitioner also admits that Mr. Bell continued to render the same services to petitioner during the periods in issue. The provisions

**[*13]** in petitioner's leasing contracts with NESL and ILS describe services provided by Mr. Bell which are indisputably not "minor". Finally, Mr. Bell indirectly received remuneration from petitioner, a fact which petitioner is collaterally estopped from challenging. Accordingly, Mr. Bell was petitioner's employee during the periods in issue, and petitioner is liable for the employment taxes and related withholding.

We now turn to the fourth and fifth questions in issue: whether the periods of limitations for assessing and collecting the employment taxes and withholding amounts remain open and whether petitioner is liable for fraud penalties.

In the case of the filing of a false or fraudulent return with intent to evade tax, the tax may be assessed at any time. Sec. 6501(c)(1); see Neely v. Commissioner, 116 T.C. 79, 85 (2001). If the return is fraudulent in any respect, it deprives the taxpayer of the bar of the period of limitations for that year. Lowy v. Commissioner, 288 F.2d 517, 519-520 (2d Cir. 1961), aff'g T.C. Memo. 1960-32. "Thus, where fraud is alleged and proven, * * * [the Commissioner] is free to determine a deficiency with respect to all items for the particular taxable year without regard to the period of limitations." Colestock v. Commissioner, 102 T.C. 380, 385 (1994).

**[\*14]** Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing.  See <u>McGee v. Commissioner</u>, 61 T.C. 249, 256 (1973), <u>aff'd</u>, 519 F.2d 1121 (5th Cir. 1975).[4]  The Commissioner has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  The Commissioner's burden of proof under section 6501(c)(1) is the same as that imposed by section 6663.  See <u>Pennybaker v. Commissioner</u>, T.C. Memo. 1994-303.  To satisfy the burden of proof, the Commissioner must show that (1) an underpayment exists and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  See <u>Parks v. Commissioner</u>, 94 T.C. 654, 660-661 (1990). The Commissioner must meet this burden through affirmative evidence because fraud is never presumed.  <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 699 (1989); <u>see also</u> <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970).

As explained above, we have sustained respondent's determination that there exist underpayments of employment taxes and withholding.  When deciding intent, in the case of a corporate petitioner we look to the fraudulent intent of

---

[4]In <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all Court of Appeals for the Fifth Circuit decisions issued before October 1, 1981.

[*15] individuals acting in their capacity as corporate officers. See Benes v. Commissioner, 42 T.C. 358, 382 (1964) ("Where fraud is alleged against a corporate taxpayer, the requisite proof of fraudulent intent is to be found in the acts of its officers, inasmuch as the corporation, being an artificial person created by law, can have no separate intent of its own apart from those who direct its affairs."), aff'd, 355 F.2d 929 (6th Cir. 1966), overruled on another issue by Truesdell v. Commissioner, 89 T.C. 1280 (1987). "Corporate fraud necessarily depends upon the fraudulent intent of the corporate officer." Federbush v. Commissioner, 34 T.C. 740, 749 (1960), aff'd, 325 F.2d 1 (2d Cir. 1963).

We find that for each period in issue, petitioner's withholding form and Forms 941 and 940 were false or fraudulent returns because its officers intentionally omitted payments made for Mr. Bell's benefit with the specific purpose to evade tax believed to be owing. Petitioner properly reported Mr. Bell's wages before 1996. For the periods in issue, petitioner's officers entered into leasing contracts which were part of an overall scheme of offshore transactions. Mr. Bell's already established fraud as to those offshore transactions is evidence we can consider in finding petitioner's fraudulent intent. See Hi-Q Personnel, Inc. v. Commissioner, 132 T.C. at 292; Benes v. Commissioner, 42 T.C. at 382. Mr. Bell acted in his capacity as petitioner's officer when he designed and

**[*16]** implemented the OEL transaction with Mr. Reiserer. See Foxworthy, Inc. v. Commissioner, 2009 WL 2877850. Mr. Comsudes, another individual acting in his capacity as an officer, assisted by signing petitioner's lease agreements. We find that as a result of the scheme to understate Mr. Bell's Federal income, petitioner evaded its employment tax obligations. Whether this was by design or implementation is irrelevant. Any employment tax fraud was part and parcel of an overall intent to defraud the Government. See Hi-Q Personnel, Inc. v. Commissioner, 132 T.C. at 299 n.11. Petitioner had to avoid the employment taxes due respondent for either it or Mr. Bell to evade responsibility. See id. The reporting of one would almost certainly have led respondent to challenge the omission of the other. See id.

Petitioner contends that respondent has not met his burden. Petitioner alleges that it reasonably relied on its leasing agreements, and that Mr. Bell's actions and his secondary contracts with the leasing companies cannot be imputed to petitioner. We disagree. Petitioner has identified no facts or evidence it could present at trial to disprove that its officers entered into the leasing contracts with full awareness and design of the overall OEL transactions. Petitioner merely denies that Mr. Bell was the lone decision maker for petitioner and states that Mr. Bell was not the sole officer. Even viewed in the light most favorable to

[*17] petitioner, these two facts are insufficient to establish that petitioner's role in the OEL transactions is genuinely in dispute for trial. Petitioner does not identify any such other decision maker or officer who could change our view. Neither does petitioner identify what evidence such an alleged decision maker or officer could present. Petitioner has supplied no information or affidavit in support of its claim that its officers' actions and leasing agreements were separate from Mr. Bell's fraudulent scheme. In fact, in Foxworthy we found that the other officer involved in the transactions, Mr. Comsudes, signed whatever documents Mr. Bell put in front of him. Foxworthy, Inc. v. Commissioner, 2009 WL 2877850, at *22.

Respondent has shown by clear and convincing evidence that petitioner intentionally understated its employment tax and withholding obligations with the specific purpose to evade Mr. Bell's taxes. Because we have sustained the taxes respondent determined, except to the extent discussed below, we conclude that the entire underpayment is attributable to fraud. Accordingly, the usual three-year period of limitations of section 6501(a) does not apply. See sec. 6501(c)(1); Neely v. Commissioner, 116 T.C. at 85. Respondent's determinations were thus timely.

Furthermore, for each period in issue, petitioner is liable for the section 6663(a) fraud penalty. Section 6663(a) provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall

**[\*18]** be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." Respondent has met his burden by proving that the underpayments of tax were due to fraud. In doing so, respondent has met the high burden of clear and convincing evidence, and there is no issue with regard to the burden of production. See sec. 7491(c). In any case section 7491(c) does not apply to an entity such as petitioner because it is not a prevailing party. See secs. 7491(a)(2)(C), 7430(c)(4)(A)(ii). Similarly, because the instant fraud penalties are due to a failure to file tax returns or to pay tax, see sec. 6651, there is no additional penalty approval requirement, see sec. 6751(b)(2)(A).

Petitioner contends that imposing fraud penalties in the instant case violates the Eighth Amendment to the Constitution. The section 6663(a) fraud penalty is remedial, rather than punitive, and thus does not implicate the Eighth Amendment Excessive Fines Clause. See Thompson v. Commissioner, 148 T.C. 59, 64 (2017); Wilson v. Commissioner, T.C. Memo. 2002-234. The fraud penalty is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. See Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Because petitioner is liable for the underpayment of employment taxes

**[*19]** and intended to prevent the collection of those taxes, petitioner is liable for the section 6663(a) fraud penalties in their entirety.

Finally, petitioner contends that respondent has improperly computed the taxes owed. In <u>Foxworthy, Inc. v. Commissioner</u>, 2009 WL 2877850, at *27, we held that the proper amounts petitioner paid to Mr. Bell as wages were $800,000, $1,220,000, $2,225,000, $2,430,000, $1,880,000, and $425,000 for the services of Mr. Bell in 1996, 1997, 1998, 1999, 2000, and 2001, respectively. It is these same payment amounts which respondent determined in the NDWC to be wages petitioner paid for Mr. Bell's services in the OEL scheme. Respondent used the correct basis for the assessments, and petitioner has shown no specific calculation error.

Petitioner's claim that it is entitled to an unquantified credit for any employment taxes allegedly paid by the leasing companies is also mistaken. Petitioner contends that corporate ledgers presented in <u>Foxworthy</u> show that payroll taxes were paid. Whether another entity may have paid employment taxes, however, is irrelevant to the question at hand. We are not subjecting Mr. Bell's wages to a second employment tax; we are finding that petitioner was Mr. Bell's employer, and as such the proper entity required to pay employment taxes.

**[*20]** Petitioner is also mistaken that it is entitled to the lower withholding tax rate under section 3509. Section 3509 does not apply if the liability is due to the employer's intentional disregard of the requirement to deduct and withhold such tax. Because petitioner intentionally understated its employment tax and withholding obligations, it intentionally disregarded its known requirement to deduct and withhold tax and is not entitled to the lower withholding tax rate under section 3509.

In conclusion and for the reasons stated above, subject to the adjustment to the amount in Mr. Bell's wages discussed above, we sustain respondent's Notice of Determination of Worker Classification dated June 22, 2007.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.